1  Michael S. Kwun (SBN 198945)
   mkwun@kblfirm.com
2  Nicholas A. Roethlisberger (SBN 280497)
   nroethlisberger@kblfirm.com
3  KWUN BHANSALI LAZARUS LLP
   555 Montgomery St., Suite 750
4  San Francisco, CA 94111
   Tel: (415) 630-2350
5  Fax: (415) 367-1539

6  Ben Rosenfeld (SBN 203845)
   ben.rosenfeld@comcast.net
7  ATTORNEY AT LAW
   3330 Geary Blvd., 3rd Floor East
8  San Francisco, CA 94118
   Tel: (415) 285-8091
9  Fax: (415) 285-8092

10 Attorneys for Defendant
   ISIS AGORA LOVECRUFT
11

12              UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF CALIFORNIA
13                    OAKLAND DIVISION

14

15 PETER TODD, an individual,              Case No.: 4:19-cv-01751-DMR

             Plaintiff,                    DEFENDANT'S NOTICE OF MOTION
16                                         AND SPECIAL MOTION TO STRIKE
                                           PLAINTIFF'S COMPLAINT (ANTI-
17 vs.                                     SLAPP MOTION)

18 SARAH MICHELLE REICHWEIN aka ISIS       (Cal. Code of Civ. Proc. § 425.16 et seq.)
   AGORA LOVECRUFT, an individual,
19
             Defendant.                    Date:  August 22, 2019
20                                         Time: 1:00 p.m.
                                           Location: Courtroom 4
21
22                                         Action Filed: April 3, 2019

23

24

25

26

27

28

─────────────────────────────────────────────
               DEFENDANT'S SPECIAL MOTION TO STRIKE
                    (No. 4:19-cv-01751-DMR)

# TABLE OF CONTENTS <span style="float:right">Page</span>

I.     INTRODUCTION ........................................................................................ 1

II.    STATEMENT OF FACTS ........................................................................... 3

III.   ARGUMENT ............................................................................................... 6

    A.     California's anti-SLAPP statute provides for early dismissal of claims targeting protected speech, and this substantive protection against SLAPP suits applies in federal court ................................................................................................ 7

    B.     Lovecruft's speech was a matter of public concern communicated in a public forum ...................................................................................................... 8

    C.     Todd cannot meet his burden of coming forward with admissible evidence to show that he has a probability of prevailing on his defamation claim .................. 9

         1.     Todd is a limited-purpose public figure who must, but cannot, prove that Lovecruft acted with actual malice ...................................................... 10

              i.     Todd is at least a limited-purpose public figure .......................... 11

                    a.     The sexual harassment at issue is a public controversy ... 11

                    b.     Todd injected himself into the controversy, making himself a limited-purpose public figure ........................... 12

                    c.     The alleged defamation is germane to plaintiff's participation in the controversy ........................................ 13

              ii.    Plaintiff cannot prove that Lovecruft acted with actual malice ... 14

         2.     Even if Todd were not a limited-purpose public figure, he cannot meet his burden of proving that Lovecruft failed to exercise reasonable care ....................................................................................................... 14

         3.     Todd alleges that he was defamed by two statements that on their face are not defamatory ................................................................................ 15

         4.     One of the challenged statements is not defamation *per se*, and must be stricken for Plaintiff's failure to plead and prove special damages ......... 17

    D.     The Court should strike the complaint with prejudice and without leave to amend ........................................................................................................... 18

IV.   CONCLUSION ......................................................................................... 19

1

## TABLE OF AUTHORITIES

**Page(s)**

2

3

**Cases**

4

*Baral v. Schnitt*
   1 Cal. 5th 376 (2016) ...................................................................................... 8

5

*Barnes-Hin, Inc. v. Superior Court of Santa Clara Cnty.*
   181 Cal. App. 3d 377 (1986) ................................................................. 15, 17

6

7

*Barrett v. Rosenthal*
   40 Cal. 4th 33 (2006) ..................................................................................... 9

8

*Batzel v. Smith*
   333 F.3d 1018 (9th Cir. 2003) ........................................................................ 7

9

10

*Briggs v. Eden Council for Hope and Opportunity*
   19 Cal. 4th 1106 (1999) ................................................................................. 7

11

*Cabrera v. Alam*
   197 Cal. App. 4th 1077 (2011) ............................................................. 10, 11

12

13

*Carney v. Santa Cruz Women Against Rape*
   221 Cal. App. 3d. 1009 (1990) .................................................................. 9, 15

14

*Copp v. Paxton*
   45 Cal. App. 4th 829 (1996) ................................................. 10, 11, 12, 13

15

16

*Daniel v. Wayans*
   8 Cal. App. 5th 367 (2017) ............................................................................ 9

17

*Eastwood v. National Enquirer, Inc.*
   123 F.3d 1249 (9th Cir. 1997) ...................................................................... 14

18

19

*Equilon Enters., LLC v. Consumer Cause, Inc.*
   29 Cal. 4th 53 (2002) ..................................................................................... 8

20

*Gabrielson v. Montgomery Ward & Co.*
   785 F.2d 762 (9th Cir. 1986). ...................................................................... 18

21

22

*Gertz v. Robert Welch, Inc.*
   418 U.S. 323 (1974) ............................................................................. 10, 11

23

*Guzman v. Finch*
   No. 19CV412-MMA (MDD), 2019 WL 1877184 (S.D. Cal. Apr. 26, 2019) ............................ 9

24

25

*Harkonen v. Fleming*
   880 F. Supp. 2d 1071 (N.D. Cal. 2012) ....................................................... 14

26

*Hecimovich v. Encinal Sch. Parent Teacher Org.*
   203 Cal. App. 4th 450 (2012) ................................................. 6, 10, 15

27

28

*Khawar v. Globe Int'l, Inc.*
   19 Cal. 4th 254 (1998) ................................................................................. 11

*Knight First Amendment Inst. at Columbia Univ. v. Trump*
  No. 18-1691-CV, 2019 WL 2932440 (2d Cir. July 9, 2019) ......................... 9

*Makaeff v. Trump Univ., LLC*
  715 F.3d 254 (9th Cir. 2013) ................................................. 6, 10, 13

*Manzari v. Associated Newspapers Ltd.*
  830 F.3d 881 (9th Cir. 2016) ................................................... 7

*Martin v. Wells Fargo Bank*
  No. 2:17-CV-03425-RGK-SS, 2018 WL 6333688, (C.D. Cal. Jan. 18, 2018) ... 18

*Masson v. New Yorker Magazine, Inc.*
  501 U.S. 496 (1991) ............................................................ 14

*Metabolife Int'l, Inc. v. Wornick*
  264 F.3d 832 (9th Cir. 2001) ................................................ 8, 9

*Nadel v. The Regents of Univ. of California*
  28 Cal. App. 4th 1251 (1994) ................................................. 12

*Navellier v. Sletten*
  106 Cal. App. 4th 763 (2003) ............................................... 8, 18

*New York Times Co. v. Sullivan*
  376 U.S. 254 (1964) ....................................................2, 6, 10, 13

*Nygard, Inc. v. Uusi-Kerttula*
  159 Cal. App. 4th 1027 (2008) ................................................ 14

*Okun v. Superior Court of Los Angeles Cnty.*
  29 Cal. 3d 442 (1981) ........................................................ 12

*Packingham v. North Carolina*
  137 S. Ct. 1730 (2017) ........................................................ 9

*Planned Parenthood Fed'n of Am, Inc. v. Center. for Med. Progress*
  890 F.3d 828 (9th Cir. 2018) .................................................. 8

*Premier Medical Management Systems, Inc. v. California Ins. Guarantee Ass'n.*
  136 Cal. App. 4th 464 (2006) ............................................... 8, 18

*Reader's Digest Assn. v. Superior Court*
  37 Cal. 3d 244 (1984) ........................................................ 12

*Roberts v. Los Angeles County Bar Ass'n.*
  105 Cal. App. 4th 604 (2003) ................................................. 8

*Rudnick v. McMillan*
  25 Cal. App. 4th 1183 (1994) ................................................. 12

*United States v. Lockheed Missiles & Space Co., Inc.*
  171 F.3d 1208 (9th Cir. 1999) ................................................. 7

*Verizon Delaware, Inc. v. Covad Commc'ns Co.*
   377 F.3d 1081 (9th Cir. 2004) ........................................................18

*Waldbaum v. Fairchild Publications, Inc.*
   627 F.2d 1287 (D.C. Cir. 1980).........................................11, 13, 14

*Wong v. Jing*
   189 Cal. App. 4th 1354 (2010)...........................................................9

*ZL Techs., Inc. v. Does 1-7*
   13 Cal. App. 5th 603 (2017) ............................................................16

## Statutes

Cal. Civ. Code § 48a(4)(d)...........................................................14, 17

California Code of Civil Procedure § 425.16 .......................................passim

## Other Authorities

Judicial Council of California Civil Jury Instructions ...............................15

## Rules

Federal Rule of Civil Procedure 12 ....................................................8

Federal Rule of Civil Procedure 15 ...................................................18

Federal Rule of Civil Procedure 56 ....................................................8

## NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE

**PLEASE TAKE NOTICE** that on August 22, 2019, at 1:00 p.m. or as soon thereafter as the matter may be heard, in Courtroom 4 of the Honorable Magistrate Judge Ryu at the United States District Court for the Northern District of California, 1301 Clay Street, Oakland CA, 94612, Defendant Isis Lovecruft ("Lovecruft") shall and hereby does move the Court to strike Plaintiff Peter Todd's ("Todd") complaint pursuant to California's anti-SLAPP statute, California Code of Civil Procedure § 425.16.

Lovecruft requests that the Court strike Todd's complaint without leave to amend. The complaint should be stricken because the sole cause of action, for defamation, raises a matter of public concern, and Todd cannot produce evidence sufficient to meet his burden under section 425.16 of the California Code of Civil Procedure. This motion is based on this motion and notice of motion, the supporting memorandum of points and authorities, the supporting declarations of Defendant Lovecruft, Witnesses Bryce Wilcox and "Jane Doe," and Defense Counsel Ben Rosenfeld, the exhibits thereto, and any other written or oral evidence or argument as may be presented at or before the time this motion is taken under submission by the Court.

## I.   INTRODUCTION

Plaintiff Peter Todd and Defendant Isis Lovecruft are both well known in the field of computer cryptography.  In May 2016, a public debate erupted over allegations of sexual misconduct by Jacob Appelbaum, then a developer for the Tor Project, a nonprofit digital privacy group, for whom Lovecruft used to work too. The *New York Times* reported that the allegations "divided the internet privacy community," resulting in an internal investigation at the Tor Project, and the replacement of the group's entire board of directors.[1] After investigating, the Tor Project concluded that the allegations were accurate, while Appelbaum continued to dispute them. *Id.*

/ / /

---

[1] "Tor Project Confirms Sexual Misconduct Claims Against Employee," *New York Times*, 7/27/16 (Rosenfeld Decl. ¶ 4, Ex. 4.) The article can be found online at https://www.nytimes.com/2016/07/28/technology/tor-project-jacob-appelbaum.html.

As the *New York Times* reported, Lovecruft was an active participant in the debate. *Id.* Lovecruft's participation was not limited to the Appelbaum allegations; for the past three years, they[2] have vocally participated in a wide-ranging public debate about sexual assault in the cryptography community. Todd, a member of the same tech community with 146,000 Twitter followers, chose to join this public debate. In February 2018, Lovecruft conversed with a woman who told her that Todd had raped her. Based on Lovecruft's own personal experiences being sexually harassed and physically assaulted by Todd, Lovecruft believed this woman and in 2019 called out Todd for his misconduct. This lawsuit for defamation is Todd's response.

California, however, has a strong public policy against lawsuits that chill free speech on matters of public concern. That policy, expressed in California's "anti-SLAPP"[3] law, requires that a claim (such as Todd's defamation claim) that arises from another's exercise of free speech (such as Lovecruft's statements targeted by Todd's complaint) be struck at the outset of a case unless the plaintiff can come forward with *admissible evidence* showing a probability of prevailing.

This case presents a classic application of the policies underlying California's anti-SLAPP law. First, California courts have recognized, for decades, that sexual assault is a matter of public concern. Lovecruft's participation in this debate thus falls squarely within the scope of speech protected by California's anti-SLAPP law.

Second, Todd cannot show a probability of succeeding on his defamation claim. By voluntarily injecting himself into this public debate, Todd made himself a public figure, at least for the limited purpose of the issue of sexual assault in the cryptography community, a community in with Todd concedes he is well known. Lovecruft's statements asserting that Todd himself has engaged in sexual misconduct are thus protected under *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964), unless Todd can demonstrate Lovecruft's actual malice in making the statements. Todd cannot meet that burden. Indeed, Todd cannot even present

---

[2] Lovecruft uses the pronouns "they," "them," and "their."

[3] "SLAPP" is an acronym for "strategic lawsuit against public participation."

evidence that Lovecruft made the statements negligently—his burden even if he were not a public figure—as Lovecruft reasonably relied in good faith on the detailed account of a victim who told Lovecruft that Todd raped her.

Todd's complaint by its very nature chills Lovecruft's protected speech, and he cannot prove that he is likely to prevail on his claim. The Court should strike his complaint without leave to amend and allow Lovecruft to seek attorney's fees and costs incurred in the course of making and arguing this motion.

## II.    STATEMENT OF FACTS

Todd is a self-described prominent, applied cryptography consultant, and a former Bitcoin core developer, who regularly speaks at conferences around the world. (Complaint, ¶ 1.) He has 146,000 followers on his twitter account.  (Rosenfeld Decl. ¶ 3, Ex. 1.)  His website, petertodd.org, links to numerous professional papers written between 2013 and 2017. (*Id.*) Lovecruft is also a computer cryptography expert and consultant, and a former developer for the Tor Project who regularly attends and sometimes speaks at cryptography conferences. (Lovecruft Decl. ¶ 2.) Todd and Lovecruft thus operate in overlapping professional circles, and they used to communicate extensively. They were professional acquaintances, not close friends, and never romantically involved. (*Id.* ¶ 3; Complaint, ¶ 3.)

In 2014, Mr. Todd began making explicit, verbal sexual advances toward Lovecruft during conferences and meetings, such as at the Tor Developer Meeting in Paris, France in early July 2014, sometimes in front of their colleagues and peers—though he typically did so quietly in order not to be heard by others present. (Lovecruft Decl. ¶ 4.) Lovecruft found his behavior inappropriate and demeaning, and expressly and repeatedly informed him that his advances were unwelcome—politely and professionally at first, but with increasing stridence and derision.  (*Id.*)

In September 2015, Todd emailed Lovecruft saying he was coming to San Francisco where Lovecruft resided and wanted to consult with Lovecruft on a Bitcoin security question. (*Id.* ¶ 5.) Lovecruft met Todd at Workshop Café in San Francisco. (*Id.*) During that meeting, Todd repeatedly interrupted their meeting to make explicit and vulgar sexual advances at

Lovecruft, stating (not asking) what he was going to do to Lovecruft, sometimes under his breath while appearing just to be using his computer. (*Id.*; *see also* Ex. 2 (December 5, 2018 message exchange between Lovecruft and another person, in which Lovecruft reflected on and wrote about Todd's behavior, months prior to Todd's initiation of this action).)

In response to Todd's offensive behavior in the Workshop Café, Lovecruft fled, saying they were hungry and going to get food. Todd, without asking, followed Lovecruft outside as they walked to a taqueria, continuing to make unwanted verbal advances along the way. (*Id.* ¶¶ 6-7.) Todd then repeatedly asked Lovecruft to go back to his hotel with him, describing his explicit sexual fantasies. (*Id.* ¶ 7.) Uncomfortable, and increasingly frightened, Lovecruft escalated their responses from ignoring Todd and striding on, to saying they were not interested, to rebuking Todd and telling him to stop. (*Id.*)

After Lovecruft ordered food, Todd followed Lovecruft out of the taqueria. (*Id.* ¶ 8.) Lovecruft set out in a direction away from their home to prevent Todd from gleaning any clue about where Lovecruft lived. (*Id.*) As they walked along Mission Street, at about 7th Street, Todd stated they were headed toward his hotel, upon which Lovecruft did an about face and headed the other direction, saying "bye" or "see you later," or words to that effect. (*Id.*) At that moment, Todd grabbed Lovecruft's arm and spun Lovecruft around to face him. In defense, Lovecruft shoved Todd's chest with both hands, causing him to stumble back but not fall, and said they were going home and that Todd should not follow. (*Id.*) To Lovecruft's knowledge, Todd then finally stopped following Lovecruft. (*Id.*)

Scared and traumatized, Lovecruft did not go directly home, but walked around for several hours. (*Id.* ¶ 9.) They sat in lower Golden Gate Park for a time, and took a circuitous route home, in order both to collect themself, and to make absolutely certain that Todd was not still following them. (*Id.*)

After this incident, Lovecruft sought to avoid Todd, going so far as to misstate where they were in the world when Todd inquired and continued to seek Lovecruft out. (*Id.* ¶ 10.) Nevertheless, in order to avoid further personal tension or professional drama, Lovecruft did not publicize Todd's harassing and assaultive behavior up to that point.

Beginning in late May 2016, allegations of sexual assault against Jacob Appelbaum, a famous cyber security expert and software developer, erupted into the public spotlight. (*Id.* ¶ 15.) Lovecruft, who reported being a victim of Appelbaum's, participated extensively in calling Appelbaum out and in the public discussions that ensued. (*Id.*; *see also* Ex. 3 (Lovecruft's detailed account, "The Forest for the Trees," posted online on June 13, 2016).)

The controversy over Appelbaum has raged publicly for years. A Google search of the term "jacob appelbaum rape," for example, yields thousands of results. Lovecruft's public testimonials regarding Appelbaum have been widely referenced, including in the Wikipedia page on Appelbaum.   (*See*, *e.g.*, Rosenfeld Decl. ¶ 4; Ex. 4 ("Tor Project Confirms Sexual Misconduct Claims Against Employee," *New York Times*, 7/27/16); Ex. 5 ("Power, secrecy and cypherpunks: how Jacob Appelbaum ripped Tor apart," *The Guardian*, 10/11/16); Ex. 6 ("Developer Tells Her Story Publicly as Hacker Community Struggles to Address Sexual Assault," *Gizmodo*, 12/29/17).) Lovecruft has faced retaliation for denouncing Appelbaum. (*See*, *e.g.*, Lovecruft Decl. ¶ 16; Ex. 7.)

In wading into the controversy, Todd expressed repeated doubt about the allegations against Appelbaum. Todd acknowledges one such expression in his complaint: "In August 2016, Todd publicly stated that he did not know what was true regarding Defendant's and others' allegations against Appelbaum." (Complaint, ¶ 31.) Todd also acknowledges that Lovecruft asserted that Todd "publicly, repetitively defended" Appelbaum. (Complaint, ¶ 34 (quoting Twitter post by Lovecruft).)   On June 9, 2016, Todd tweeted his belief that the "@ioerror claims" (Appelbuaum's Twitter handle is @ioerror) were "difficult" to verify, and stated that without "solid evidence" such as "audio/video recording of @ioerror abusing someone" it would be best to "stay neutral." (Lovecruft Decl. Ex. 8.) In another tweet on June 26, 2016, Todd suggested that "what happened with @ioerror" could lead to "a subsequent privacy effort" to "exclude women." (*Id.*)

As Todd alleges, in May 2017, he contacted Lovecruft through Github, ostensibly to discuss a software issue. (Complaint, ¶ 33.) However, Lovecruft regarded his inquiry as a pretext to interact with them, and responded by chastising Todd for defending Appelbaum,

telling him: "Do not use work as an excuse to speak to me. Do not use cryptography as an excuse to speak to me." (*Id.*, ¶ 34; Lovecruft Decl. ¶ 18.)

On or about February 10, 2018, fellow cryptographer Bryce Wilcox put Lovecruft in touch with two other people who also had accounts of sexual misconduct by Todd. (Wilcox Decl. ¶¶ 4-7.) On February 15, 2018, Lovecruft communicated extensively with one of the women, Jane Doe,[4] who provided Lovecruft with a detailed account of Todd's sexual assault of her in May 2017, telling Lovecruft explicitly, "he [Peter Todd] raped me." (*See* Lovecruft Decl. ¶ 21-23, Ex. 9; Rosenfeld Decl. ¶ 2, Ex. A (the "Jane Doe" declaration).)

On February 20, 2019, based on Lovecruft's personal experiences with Todd and their discussion with Jane Doe, Lovecruft obliquely referred to Todd as a rapist in a tweet (Twitter post). (Complaint, ¶ 38; Lovecruft Decl. ¶ 24-25.)

## III.   ARGUMENT

Todd's complaint must be stricken under California's anti-SLAPP statute because the sole cause of action, for defamation, targets Lovecruft's protected speech, and Todd cannot meet his burden of coming forward with evidence to establish that he has a probability of prevailing on his claim. *See* Cal. Code Civ. Proc. § 425.16. Under California law, to "prevail on a claim for defamation, plaintiff must show four elements: that defendants published the statements; that the statements were about plaintiff; that they were false; and that defendants failed to use reasonable care to determine the truth or falsity." *Hecimovich v. Encinal Sch. Parent Teacher Org.*, 203 Cal. App. 4th 450, 470 (2012). Furthermore, someone who is a limited-purpose public figure has the additional burden of proving that the defendant acted with "actual malice." *Makaeff v. Trump Univ., LLC,* 715 F.3d 254, 271 (9th Cir. 2013). Actual malice means that the defamatory statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times*, 376 U.S. at 280.

Todd—who as shown below is at least a limited-purpose public figure—cannot make the necessary showing here because he cannot prove that Lovecruft acted with actual malice or

---

[4] Jane Doe is a pseudonym.

failed to use reasonable care in making the statements at issue. Furthermore, at least two of the statements that Todd challenges are not defamatory as a matter of law, and a third statement is not supported with evidence of special damages.

As such, Todd's complaint should be stricken and he should not be given leave to amend.

### A. California's anti-SLAPP statute provides for early dismissal of claims targeting protected speech, and this substantive protection against SLAPP suits applies in federal court

California's anti-SLAPP statute was "was enacted to allow for early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." *Batzel v. Smith*, 333 F.3d 1018, 1024 (9th Cir. 2003) (internal citation and quotes omitted). The statute expresses California's public policy in checking "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition." Cal. Code Civ. Proc. § 425.16(a). The statute's burden-shifting mechanism weeds out lawsuits "brought to deter common citizens from exercising their political or legal rights or to punish them for doing so." *Manzari v. Associated Newspapers Ltd.*, 830 F.3d 881, 886-87 (9th Cir. 2016) (internal quotes omitted).

To meet these goals, the California Supreme Court requires that the statute be interpreted broadly, stating that "whenever possible, [courts] should interpret the First Amendment and section 425.16 in a manner favorable to the exercise of freedom of speech, not its curtailment." *Briggs v. Eden Council for Hope and Opportunity*, 19 Cal. 4th 1106, 1119 (1999) (internal citation omitted). A defamation suit, such as this one, is the prototypical sort of case that California's anti-SLAPP statute was designed to shield defendants from. *Id.* at 1125 ("The favored causes of action in SLAPP suits are defamation, various business torts such as interference with prospective economic advantage, nuisance and intentional infliction of emotional distress.")

The Ninth Circuit has squarely held that the anti-SLAPP statute serves "important, substantive state interests," and must be applied in federal court. *United States v. Lockheed Missiles & Space Co., Inc.,* 171 F.3d 1208, 1218 (9th Cir. 1999). In applying the anti-SLAPP

statute, federal courts review the motion either under Federal Rule of Civil Procedure 12 or Federal Rule of Civil Procedure 56—depending on whether or not the defendant challenges the factual sufficiency of the plaintiff's claim. "[W]hen an anti-SLAPP motion to strike challenges the factual sufficiency of a claim, then the Federal Rule of Civil Procedure 56 standard will apply." *Planned Parenthood Fed'n of Am, Inc. v. Center. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018). Here, Lovecruft has come forward with evidence showing that Todd cannot meet his burden. Thus, the motion should be analyzed under Rule 56, which means that Todd must come forward with admissible evidence to support his case.

Under the anti-SLAPP statute, courts undertake a two-pronged analysis. To begin, "the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity," pursuant to one of the four categories listed under California Code of Civil Procedure section 425.16(e). If the court concludes that the challenged activity is protected, the burden shifts to the plaintiff to demonstrate a probability of success on the claims based on competent, admissible evidence. Failing that, the claims must be dismissed. *Equilon Enters., LLC v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 67 (2002); *see also Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 840 (9th Cir. 2001); *Baral v. Schnitt*, 1 Cal. 5th 376, 384 (2016).

"[P]laintiffs' burden as to the second prong of the anti-SLAPP test is akin to that of a party opposing a motion for summary judgment." *Navellier v. Sletten*, 106 Cal. App. 4th 763, 768 (2003). To establish he has a probability of prevailing on his defamation claim, plaintiff must demonstrate both a legally cognizable claim *and* prima facie facts sufficient to support a judgment in his favor. *Premier Medical Management Systems, Inc. v. California Ins. Guarantee Ass'n.*, 136 Cal. App. 4th 464, 476 (2006). The plaintiff must adduce admissible evidence; he cannot rely simply on his pleadings. *Roberts v. Los Angeles County Bar Ass'n.*, 105 Cal. App. 4th 604, 613-14 (2003).

## B.   Lovecruft's speech was a matter of public concern communicated in a public forum

Lovecruft easily meets their burden under the first prong of the anti-SLAPP statute

because the speech at issue here was made in public forum—Twitter—in connection with an issue of "public interest"—the ongoing epidemic of sexual abuse and harassment of women and female assigned people by men. *See* Cal. Code Civ. Proc. § 425.16(e)(3), (4).

First, "sexual harassment and violence against women is of pressing public concern." *Carney v. Santa Cruz Women Against Rape,* 221 Cal. App. 3d. 1009, 1021 (1990). That is as undeniable today as it was twenty-nine years ago, when *Carney* was decided, as anyone who follows the news well knows. Lovecruft's active participation in this debate has been widely covered, and they have been quoted speaking about the "community justice process" that is necessary to heal the blight of abuse. (*See* Lovecruft Decl. Ex. 3; Rosenfeld Decl. Exs. 4-6.)

Second, Twitter is the public forum of our age. The Supreme Court has held that the use of social media is "protected First Amendment activity." *Packingham v. North Carolina,* 137 S. Ct. 1730, 1735-36 (2017). The Second Circuit meanwhile has held that the President's public use of Twitter, including debate making "its interactive features accessible to the public without limitation," constitutes a public forum. *Knight First Amendment Inst. at Columbia Univ. v. Trump*, No. 18-1691-CV, 2019 WL 2932440, at *6 (2d Cir. July 9, 2019). And it is "well settled under California law that web sites accessible to the public are 'public forums' for purposes of the anti-SLAPP statute." *Guzman v. Finch*, No. 19CV412-MMA (MDD), 2019 WL 1877184, at *4 (S.D. Cal. Apr. 26, 2019) (citing *Barrett v. Rosenthal,* 40 Cal. 4th 33, 41 n.4 (2006), and *Wong v. Jing,* 189 Cal. App. 4th 1354, 1366 (2010)). It cannot be disputed that Twitter is a public forum. *Daniel v. Wayans*, 8 Cal. App. 5th 367, 387-88 (2017). Lovecruft thus made their statements in a public forum.

### C.   Todd cannot meet his burden of coming forward with admissible evidence to show that he has a probability of prevailing on his defamation claim

Because Lovecruft has met their initial burden under the anti-SLAPP statute, the burden shifts to Todd to prove, based on competent, admissible evidence that he has a probability of prevailing on his defamation claim. *Metabolife Int'l, Inc.*, 264 F.3d at 840.

Again, to prevail on a claim for defamation, Todd must prove, among other things, that Lovecruft's statements about Todd not only were false, but that Lovecruft "failed to use

reasonable care to determine the truth or falsity" of them. *Hecimovich*, 203 Cal. App. 4th at 470. Moreover, the First Amendment "prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times*, 376 U.S. at 279-80. This prohibition applies equally to limited-purpose public figures as to allegedly defamatory statements made within the scope of that limited purpose. *Makaeff v. Trump Univ., LLC,* 715 F.3d 254, 271 (9th Cir. 2013); *see also Cabrera v. Alam*, 197 Cal. App. 4th 1077, 1093 (2011) (granting anti-SLAPP motion when limited-purpose public figure failed to produce evidence of malice).

As shown below, Todd cannot present admissible evidence that shows he has a probability of prevailing on his defamation claim.

### 1. Todd is a limited-purpose public figure who must, but cannot, prove that Lovecruft acted with actual malice

Todd's complaint describes him as "highly-regarded in the cryptography and cryptocurrency sectors" who is "regularly invited to speak at cryptography conferences throughout the world." (Complaint ¶¶ 16-17.) He has a "large online following," including for his "regular[] posts to his Twitter profile." (*Id.* ¶ 19.) Todd chose on his own to enter a raging public debate over sexual assault and harassment in the cryptography community. As such, Todd has made himself a public figure on this subject, and must prove actual malice against Lovecruft, something which he cannot do.

A plaintiff can be a public figure for purposes of a defamation claim in one of two ways. First, "an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts." *Copp v. Paxton*, 45 Cal. App. 4th 829, 845 (1996) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974)). Second, and "more commonly," a person can become "a public figure for a limited range of issues" by "voluntarily inject[ing] himself . . . into a particular public controversy." *Id.*

/ / /

/ / /

### i.   Todd is at least a limited-purpose public figure

Todd is a limited-purpose public figure who is required to prove Lovecruft acted with actual malice because he thrust himself into a public controversy, and because Lovecruft's statements were germane to that public controversy.

There are three elements that must be satisfied for a person to be deemed a limited-purpose public figure.  First, "there must be a public controversy, which means the issue was debated publicly and had foreseeable and substantial ramifications for nonparticipants." *Cabrera*, 197 Cal. App. 4th at 1092. Second, "the plaintiff must have undertaken some voluntary act through which he or she sought to influence resolution of the public issue." *Id.* On this second element, it is not necessary that the plaintiff have succeeded in influencing the public issue, "it is sufficient that the plaintiff attempts to thrust himself into the public eye." *Id.* (internal quotation marks omitted). Third, "the alleged defamation must have been germane to the plaintiff's participation in the controversy." *Id.* (internal quotation marks omitted)*; see also Gertz,* 418 U.S. at 351-52.  The question of "whether a plaintiff in a defamation action is a public figure is a question of law for the trial court." *Khawar v. Globe Int'l, Inc.*, 19 Cal. 4th 254, 264 (1998).

### a.   The sexual harassment at issue is a public controversy

As a threshold "[t]o characteriz[ing] a plaintiff as a limited purpose public figure, the courts must first find that there was a public controversy." *Copp*, 45 Cal. App. 4th at 845.  "If [an] issue was being debated publicly and if it had foreseeable and substantial ramifications for nonparticipants, it was a public controversy." *Id.* (quoting *Waldbaum v. Fairchild Publications, Inc., 6*27 F.2d 1287, 1297 (D.C. Cir. 1980)).

In this case, there is both a general, roiling public controversy on the issues of sexual and gender violence, the rights and responsibilities of victims and the accused, and the social consequences thereof, <u>and</u> a specific public controversy on the alleged sexual abuses of Jacob Appelbaum, a prominent computer hacker whom plaintiff has publicly defended, giving rise in part to plaintiff's allegations in this case. (Complaint, ¶¶ 33-37; Rosenfeld Decl. Exs. 4 to 6.) It

/ / /

is beyond dispute that the constitutes a public controversy for purposes of characterizing Todd as a limited-purpose public figure.

### b. Todd injected himself into the controversy, making himself a limited-purpose public figure

Todd was not involuntarily swept up into a #MeToo controversy swirling within the cryptography community. Instead, Todd chose to make statements responding to Lovecruft's commentary on the Appelbaum debate. (*See, e.g.*, Complaint ¶¶ 30-31; Lovecruft Decl. ¶¶ 11-17, Exs. 8, 10.)

All that is required for a plaintiff to inject himself into a public controversy is that he take "'some voluntary act through which he seeks to influence the resolution of the public issues involved.'" *Copp*, 45 Cal. App. 4th at 845 (quoting *Reader's Digest Assn. v. Superior Court*, 37 Cal. 3d 244, 254 (1984)). "It is not necessary to show that a plaintiff actually achieves prominence in the public debate; it is sufficient that '[a plaintiff] attempts to thrust himself into the public eye'" … or to influence a public decision." *Copp*, 45 Cal. App. 4th at 845-846 (quoting *Rudnick v. McMillan*, 25 Cal. App. 4th 1183, 1190 (1994) and *Okun v. Superior Court of Los Angeles Cnty.*, 29 Cal. 3d 442, 451 (1981)).

A plaintiff can make himself a limited-purpose public figure "by discussing the matter with the press or by being quoted by the press, thus thrusting himself into the vortex of a public issue." *Rudnick*, 25 Cal. App. 4th at 1190. In *Nadel v. The Regents of University of California*, the plaintiff was deemed a limited-purpose public figure because she "spoke publicly at city council meetings and at political and cultural events. She also invited publicity by participating in a press conference regarding an incident at a demonstration in which she was arrested." 28 Cal. App. 4th 1251, 1270 (1994).

In this case, Todd thrust himself into a public debate over reports of sexual assault and harassment in the computer privacy and cryptography communities, including whether Jake Appelbaum, a famous individual in the field, stood properly accused of rape and sexual harassment, including by Lovecruft personally.

/ / /

Initially, Todd commended Lovecruft's bravery in making her statements about Appelbaum. (Complaint ¶ 30.) But it was not long before Todd began questioning the veracity of the reports against Appelbaum. On June 9, 2016, Todd stated that it would be best to "stay neutral" on whether Appelbaum had abused anyone without "solid evidence" such as an "audio/video recording" of Appelbaum "abusing someone." (Lovecruft Decl., Ex. 8.) Soon thereafter, Todd noted that "what happened" with Appelbaum could lead to "a subsequent privacy effort" to "exclude women." (*Id.*; *see also* Complaint, ¶ 31.)

As the public debate continued, several accounts on Twitter began questioning Lovecruft's credibility. As part of this effort, there were tweets questioning where Lovecruft was on specific dates. (Lovecruft Decl. ¶ 11, Ex. 10.) Todd joined this chorus. (*Id.*)[5]

This concerted effort to inject himself into and influence a public controversy surrounding harassment and sexual assault made him a limited-purpose public figure.

### c. The alleged defamation is germane to plaintiff's participation in the controversy

Lastly, Todd is a limited-purpose public figure because his statements were germane to the controversy—namely the sexual abuse and harassment of women in the field of cryptography. *See Copp*, 45 Cal. App. 4th at 846 ("the alleged defamation must have been germane to the plaintiff's participation in the controversy") (quoting *Waldbaum,* 627 F.2d at 1297); *see also Makaeff*, 715 F.3d at 269 (same). A plaintiff's "talents, education, experience, and motives could have been relevant to the public's decision whether to listen to [them]" making statements about those things germane whereas "[m]isstatements wholly unrelated to the controversy, however, do not receive the *New York Times* protection." *Waldbaum*, 627 F.2d at 1298.

Lovecruft's statements about Todd were germane to the controversy. The accusation that Todd, a prominent figure in the cryptography field, is a rapist is certainly germane to the

---

[5] Based on conduct including as the foregoing, Lovecruft asserted that Todd "publicly, repetitively defended" Appelbaum. (Complaint, ¶ 34 (quoting Twitter post by Lovecruft).)

ongoing controversy within the community concerning sexual abuse and harassment. Todd had

publicly questioned the truthfulness of Lovecruft's statements about Appelbaum, (*see* Lovecruft

Decl. Exs. 8, 10), and the accusation Todd himself was a rapist is relevant to his motives.

*Waldbaum,* 627 F.2d at 1298 ("His . . . motives could have been relevant to the public's

decision whether to listen to him.").

### ii.   Plaintiff cannot prove that Lovecruft acted with actual malice

Todd cannot prove actual malice, *i.e.* that Lovecruft knew that the statement that Todd

was a rapist was false or that they acted with "reckless disregard of whether it was false or

not.'"   *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1048 (2008). Reckless disregard

requires the defendant to have had (1) a "high degree of awareness of…probable falsity";

(2) "serious doubts as to the truth of [the defendant's] publication"; or (3) "obvious reasons to

doubt the veracity of its statements [citation] but engaged in purposeful avoidance of the truth."

*Eastwood v. National Enquirer, Inc.*, 123 F.3d 1249, 1251 (9th Cir. 1997) (citations and quotes

omitted). Furthermore, Todd would have to show actual malice by clear and convincing

evidence, which he cannot do. *See Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510

(1991).

Todd has not, and cannot, meet his burden of showing that Lovecruft acted out of actual

malice in referring to Todd as a rapist or an assaulter. The evidence establishes, rather, that

Lovecruft based their statements on both personal experience that Todd sexually harassed and

assaulted them, and on a woman relaying a first-hand account that Todd had raped her.  (*See*,

*e.g.*, Lovecruft Decl. ¶¶ 5-9, 19-23, Ex. 9; Rosenfeld Decl. Ex. A ("Jane Doe" declaration).

This is more than enough to show that Todd cannot meet his burden. Cal. Civ. Code §

48a(4)(d); *Nygard, Inc.*, 159 Cal. App. 4th at 1048; *Harkonen v. Fleming*, 880 F. Supp. 2d 1071,

1079-1080 (N.D. Cal. 2012).

### 2.   Even if Todd were not a limited-purpose public figure, he cannot meet his burden of proving that Lovecruft failed to exercise reasonable care

Even if Todd had not made himself a limited-purpose public figure by injecting himself

into a debate concerning a public controversy, he would still fail to meet his burden of showing

that Lovecruft made the statements at issue without reasonable care. Even a private figure is required to show that the defendant "failed to use reasonable care to determine the truth or falsity of the statement(s)." Judicial Council of California Civil Jury Instructions ("CACI") 1702-1705; *see also Carney*, 221 Cal. App. 3d at 1016 (The jury should be instructed that the defendant's negligence is an element of libel even if the plaintiff is a private figure.); *see also Hecimovich*, 203 Cal. App. 4th at 470 (to "prevail on a claim for defamation, plaintiff must show . . . that defendants failed to use reasonable care to determine the truth or falsity").

Here, even if Todd could present evidence that he did not rape the woman who communicated with Lovecruft, Todd cannot counter Lovecruft's showing that they exercised reasonable care by relying in good faith on the woman's account prior to calling Todd a rapist. Not only did the victim, Jane Doe, explicitly tell defendant, "he [Peter Todd] raped me," she provided extensive, inherently credible details. (*See*, *e.g.*, Lovecruft Decl. ¶¶ 5-9, 19-23, Ex. 9; Rosenfeld Decl. Ex. A ("Jane Doe" declaration).)  Todd cannot show that this did not amount to reasonable care.

### 3.   Todd alleges that he was defamed by two statements that on their face are not defamatory

Independent of the arguments above, the Court should strike portions of Todd's complaint because two of the four statements Todd alleges are defamatory (Complaint, ¶¶ 35-39, and 51) are, on their face, not defamatory.[6]  Therefore, even assuming *arguendo* that the two statements were false, which they were not, the statements cannot give rise to defamation. "If no reasonable reader would perceive in a false and unprivileged publication a meaning which tended to injure the subject's reputation in any of the enumerated respects, then there is no libel at all." *Barnes-Hin, Inc. v. Superior Court of Santa Clara Cnty.*, 181 Cal. App. 3d 377, 386 (1986).

/ / /

---

[6] A third statement is, if anything, defamation *per quod*, and must be stricken for plaintiff's failure to allege special damages, as discussed below.

In one of the statements, Todd alleges Lovecruft defamed him by stating:

> "yes, similar to Nadim, i personally have a story about Peter Todd and i've personally spoken with survivors with absolutely awful and horrifying reports who are terrified of him and of coming forward (rightly so) [¶] i however am not afraid and shitty dudes are going down."

(Complaint, ¶¶ 39, 51.)

This statement is not defamatory. The only factual statements in the tweet are that Lovecruft has a "story" about Todd, and that they have spoken to others who recounted unspecified "awful and horrifying reports." The use of "hyperbolic, informal, crude, [or] ungrammatical language, satirical tone, [or] vituperative, juvenile name-calling provide support for the conclusion that offensive comments were nonactionable opinion." *ZL Techs., Inc. v. Does 1-7*, 13 Cal. App. 5th 603, 624 (2017) (internal quotation marks and citations omitted). "Similarly, overly vague statements [citation], and generalized comments ... lack[ing] any specificity as to the time or place of alleged conduct may be a further signal to the reader there is no factual basis for the accusations." *Id.* (internal quotation marks and citations omitted). Here, a statement about vague reports and stories are simply too generalized to constitute defamation.

In another statement, Todd alleges Lovecraft defamed him by stating:

> "i love watching the men in my industry who've sexually abused me and many others squirm as I take them out one by one while they nervously await their turn [¶] hahahahahahahaha eat goat dung you epoxy brained cowards."

(Complaint, ¶¶ 37, 51.) Nothing in the foregoing statement is defamatory against Todd. In fact, it does not even mention him—and there is no indication that the statement was referring to him.

Because these statements are not defamatory as a matter of law, the Court should grant Lovecruft's motion to strike as to these two statements.

/ / /

/ / /

4.      **One of the challenged statements is not defamation *per se*, and must be stricken for Plaintiff's failure to plead and prove special damages**

Under California law there are two types of defamation: defamation *per se* and defamation *per quod*. Defamation *per se* is when the reader of an allegedly libelous statement would "perceive a defamatory meaning without extrinsic aid beyond his or her own intelligence and common sense." *Barnes-Hind,* 181 Cal. App. 3d at 386. On the other hand, if "the reader would be able to recognize a defamatory meaning only by virtue of his or her knowledge of specific facts and circumstances, extrinsic to the publication, which are not matters of common knowledge rationally attributable to all reasonable persons, then . . . the libel cannot be libel *per se* but will be libel *per quod*." *Id.* at 387. The distinction is important because if a statement is defamatory *per quod* then the plaintiff is required to plead and prove "special damages"—that is damages "suffered in respect to his or her property, business, trade, profession, or occupation." Cal. Civ. Code § 48a(d)(2).

At least one of the statements at issue here—even if proven defamatory—would only be defamation *per quod*. Todd alleges that defendant defamed him by stating:

> "This is not even touching upon the stories of the rape and assault survivors of you and @petertodd and @ioerror and you all have been seen to behave conveniently alike and seen to dutifully protect one another."

(Complaint, ¶¶ 36, 51.) This statement, *even if it were false and made without the exercise of reasonable care*, would not be libelous *per se*. This is a statement directed at a third party, not Todd, and it is not clear whether the statement calls Todd a rapist, or an assaulter, or simply references other people's prior allegations of rape or assault against Todd. As such, this purportedly libelous statement requires knowledge and consideration of extrinsic facts, and therefore cannot constitute libel *per se*.

Because the statement is not libelous *per se*, Todd is required to plead and prove special damages. He cannot do so. Here, Todd has not alleged any special damages. Rather, Todd has alleged only vague and conclusory damages, such as "shame, embarrassment, hurt feelings, anxiety, mortification, embarrassment, and loss or reputation among his friends, peers, and in

his professional community," and "professional opportunities, including conference speakerships..."  (Complaint, ¶¶ 59-60.) This is wholly insufficient as California requires that "special damages must be pled and proved precisely." *Martin v. Wells Fargo Bank*, No. 2:17-CV-03425-RGK-SS, 2018 WL 6333688, at *2 (C.D. Cal. Jan. 18, 2018) (dismissing defamation claim because special damages were not pled with the "requisite particularity").

Todd has not adequately pled special damages and will not be able to provide the required evidence supporting his claim for special damages. As such, this statement should be stricken.

### D.   The Court should strike the complaint with prejudice and without leave to amend

Under California's anti-SLAPP law, it is immaterial whether a complaint can be amended to state a valid claim. Where the plaintiff fails to meet his burden, his complaint must be stricken. *Premier Medical Management Systems, Inc.*, 136 Cal. App. 4th at 476; *Navellier*, 29 Cal. 4th at 89. The Ninth Circuit has held that, while the provisions of California's anti-SLAPP law regarding amendment conflict with the right to liberal amendment under Federal Rule of Civil Procedure 15, any amended complaint must remove "offending claims" that remain after a successful anti-SLAPP motion. *Verizon Delaware, Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004). Here, Todd's complaint contains only a claim for defamation. As shown above, this claim is wholly without merit, making any amendment futile and requiring that his lawsuit be dismissed with prejudice. *Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 766 (9th Cir. 1986).

/ / /

/ / /

---

**IV.    CONCLUSION**

For the foregoing reasons, Defendant Lovecruft requests that the Court grant them relief under California's anti-SLAPP law and strike and dismiss plaintiff's complaint, and his defamation claim therein, with prejudice.

Dated: July 15, 2019            KWUN BHANSALI LAZARUS LLP
                                BEN ROSENFELD


                                By: */s/ Nicholas Roethlisberger*
                                    Nicholas Roethlisberger

                                Attorneys for Defendant
                                ISIS LOVECRUFT