1   **KRONENBERGER ROSENFELD, LLP**
2   Karl S. Kronenberger (Bar No. 226112)
    Jeffrey M. Rosenfeld (Bar No. 222187)
3   Tomasz R. Barczyk (Bar No. 312620)
    150 Post Street, Suite 520
4   San Francisco, CA 94108
    Telephone: (415) 955-1155
5   Facsimile: (415) 955-1158
    karl@KRInternetLaw.com
6   jeff@KRInternetLaw.com
    tomasz@KRInternetLaw.com
7
8   Attorneys for Plaintiff Peter Todd

9

10

11

12
                **UNITED STATES DISTRICT COURT**
13              **NORTHERN DISTRICT OF CALIFORNIA**
                      **OAKLAND DIVISION**
14

15  **PETER TODD**, an individual,              Case No. 4:19-cv-01751-DMR

16          Plaintiff,

17      v.                                       **PLAINTIFF PETER TODD'S**
                                                 **OPPOSITION TO DEFENDANT'S**
18                                               **SPECIAL MOTION TO STRIKE**
                                                 **PLAINTIFF'S COMPLAINT (ANTI-**
19  **SARAH MICHELLE REICHWEIN** *aka*           **SLAPP MOTION)**
    **ISIS AGORA LOVECRUFT**, an individual,
20                                               Date:      August 22, 2019
            Defendant.                           Time:      1:00 p.m.
21                                               Location:  Courtroom 4
22
                                                 Complaint Filed:  April 3, 2019
23

24

25

26

27

28

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S**
                                          **SPECIAL MOTION TO STRIKE (ANTI-SLAPP)**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 1

BACKGROUND ................................................................................................................... 2

    A. Plaintiff Peter Todd and Defendant Isis Agora Lovecruft ...................................... 2

    B. Todd's Interactions with Lovecruft ......................................................................... 3

    C. Lovecruft's Numerous False Rape and Other Criminal Allegations Against Third
       Parties ....................................................................................................................... 5

    D. Lovecruft's Rape and Sexual Assault Allegations Against Peter Todd ................. 7

EVIDENTIARY OBJECTIONS............................................................................................. 8

ARGUMENT ........................................................................................................................ 9

    A. Legal Standard ........................................................................................................ 9

    B. The Tweets do not involve an issue of public concern because they solely relate
       to a private dispute between Lovecruft and Todd .................................................. 10

    C. Todd has established all of the elements of his defamation claim with admissible
       evidence ................................................................................................................. 13

    D. Todd is not a limited-purpose public figure where he did not inject himself into
       any controversy regarding allegations of his sexual conduct............................... 16

    E. Under any standard, Lovecruft acted with malice when they fabricated the facts
       in the Tweets and their filings with this Court....................................................... 19

CONCLUSION ................................................................................................................... 25



KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
SPECIAL MOTION TO STRIKE (ANTI-SLAPP)**

# TABLE OF AUTHORITIES

## Cases

*Addison v. City of Baker City*,
258 F. Supp. 3d 1207 (D. Or. 2017) .................................................................. 16, 18

*Baral v. Schnitt*,
1 Cal. 5th 376 (2016) ........................................................................................... 11

*Beroiz v. Wahl*,
84 Cal. App. 4th 485 (2000) ................................................................................ 14

*Bikkina v. Mahadevan*,
241 Cal. App. 4th 70 (2015) .......................................................................... 11, 20

*Cabrera v. Alam*,
197 Cal. App. 4th 1077 (2011) ............................................................................ 16

*Christian Research Inst. v. Alnor*,
148 Cal. App. 4th 71 (2007) ......................................................................... 21, 24

*Consumer Justice Center v. Trimedica Int'l, Inc.*,
107 Cal. App. 4th 595 (2003) .............................................................................. 12

*D.A.R.E Am. v. Rolling Stone Magazine*,
101 F. Supp. 2d 1270 (C.D. Cal. 2000) .............................................................. 20

*Diamond Pleasanton Enter., Inc. v. City of Pleasanton*,
No. 12-CV-00254-WHO, 2015 WL 74946 (N.D. Cal. Jan. 5, 2015) ........................ 8

*Dickinson v. Cosby*,
17 Cal. App. 5th 655 (2017) ................................................................................ 15

*Doe v. Los Angeles Unified Sch. Dist.*,
No. 216-CV-00305CASJEMX, 2017 WL 797152 (C.D. Cal. Feb. 27, 2017) ........... 8, 9

*Dual Diagnosis Treatment Center, Inc. v. Buschel*,
6 Cal. App. 5th 1098 (2016) .......................................................................... 12, 13

*Evans v. Unkow*,
38 Cal. App. 4th 1490 (1995) .............................................................................. 20

*Grenier v. Taylor*,
234 Cal. App. 4th 471 (2015) ........................................................... 11, 12, 14, 16

*Grewal v. Jammu*,
191 Cal. App. 4th 977 (2011) .............................................................................. 18

*Hailstone v. Martinez*,
169 Cal. App. 4th 728 (2008) .............................................................................. 12

*Harkonen v. Fleming*,
880 F. Supp. 2d 1071 (N.D. Cal. 2012) ........................................................ 12, 16

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
491 U.S. 657 (1989) ............................................................................................ 24

*Hilton v. Hallmark Cards*,
599 F.3d 894 (9th Cir. 2010) ............................................................................... 10

ii

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

*Hufstedler, Kaus & Ettinger v. Superior Court*,
    42 Cal. App. 4th 55 (1996) ........................................................................... 17

*Issa v. Applegate*,
    31 Cal. App. 5th 689 (2019) ......................................................................... 14

*Jackson v. Mayweather*,
    10 Cal. App. 5th 1240 (2017) ....................................................................... 11

*Kaelin v. Globe Commc'ns Corp.*,
    162 F.3d 1036 (9th Cir. 1998) ...................................................................... 15

*Kashian v. Harriman*,
    98 Cal. App. 4th 892 (2002) ......................................................................... 10

*Laker v. Bd. of Trustees of California State Univ.*,
    32 Cal. App. 5th 745 (2019) ......................................................................... 13

*Mann v. Quality Old Time Service, Inc.*,
    120 Cal. App. 4th 90 (2004) ......................................................................... 11

*Manzari v. Associated Newspapers Ltd.*,
    830 F.3d 881 (9th Cir. 2016) ................................................................... passim

*McGarry v. Univ. of San Diego*,
    154 Cal. App. 4th 97 (2007) ........................................................... 13, 19, 20

*Mindys Cosmetics, Inc. v. Dakar*,
    611 F.3d 590 (9th Cir. 2010) ........................................................................ 20

*Nadel v. Regents of Univ. of California*,
    28 Cal. App. 4th 1251 (1994) ....................................................................... 17

*Overstock.com, Inc. v. Gradient Analytics, Inc.*,
    151 Cal. App. 4th 688 (2007) ....................................................................... 20

*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*,
    133 Cal. App. 4th 658 (2005) ....................................................................... 14

*Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*,
    946 F. Supp. 2d 957 (N.D. Cal. 2013) ......................................................... 10

*Pogrebnoy v. Russian Newspaper Distribution, Inc.*,
    693 F. App'x 650 (9th Cir. 2017) ................................................................... 9

*Reader's Digest Assn. v. Superior Court*,
    37 Cal. 3d 244 (1984) ........................................................................... 17, 20

*Rudnick v. McMillan*,
    25 Cal. App. 4th 1183 (1994) ....................................................................... 16

*St. Amant v. Thompson*,
    390 U.S. 727 (1968) ..................................................................................... 21

*Talega Maint. Corp. v. Standard Pac. Corp.*,
    225 Cal. App. 4th 722 (2014) ....................................................................... 13

*Young v. CBS Broad., Inc.*,
    212 Cal. App. 4th 551 (2012) ....................................................................... 20

*Z.F. v. Ripon Unified Sch. Dist.*,
  482 F. App'x 239 (9th Cir. 2012)...................................................................................... 17

**Statutes**

Civil Procedure Code section 425.16 ...................................................................*passim*

**Rules**

Fed. R. Evid. 802............................................................................................................ 9

Fed. R. Evid. 901............................................................................................................ 9

iv

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE (ANTI-SLAPP)**

**INTRODUCTION**

In his Complaint, Plaintiff Peter Todd ("Todd") alleges that Defendant Sarah Michelle Reichwein *aka* Isis Agora Lovecruft ("Lovecruft") published four false and defamatory Tweets about him. Lovecruft's Tweets falsely accuse Todd of sexually assaulting and raping Lovecruft and others. Lovecruft moves to strike Todd's Complaint under Civil Procedure Code section 425.16. In support of their motion, Lovecruft argues that the Tweets are accurate because Todd sexually assaulted Lovecruft and raped another person (i.e. Jane Doe), and because Lovecruft reasonably relied on their own experience and Jane Doe's description of the alleged rape when Lovecruft published the Tweets.

Lovecruft's defense would be compelling if it were not entirely fabricated. The evidence shows that when Lovecruft has a disagreement with somebody, Lovecruft and Lovecruft's collaborators publicly and falsely accuse that person of horrific crimes. Here, when Todd did not support Lovecruft and Bryce Wilcox's Zcash cryptocurrency endeavor in 2018, Lovecruft publicly and falsely accused Todd of defending rapists. Then, when Todd again criticized Zcash in February 2019, Lovecruft publicly and falsely accused Todd of sexually assaulting and raping Lovecruft and others. When third party Jacob Appelbaum ("Appelbaum") was progressing in his cryptography studies more quickly than Lovecruft and Lovecruft's lover, Lovecruft accused Appelbaum of rape. Similarly, when third party Nadim Kobeissi raised doubts about Lovecruft's accusations of rape against Appelbaum, Lovecruft falsely accused Kobeissi of rape. When Appelbaum's academic advisors asked for the dispute to be handled through the court system, Lovecruft falsely accused them of threatening, harassing, and retaliating against Lovecruft. And in yet another case, when a prominent member of the cryptography community did not support Lovecruft in their allegation of rape against Appelbaum, Lovecruft accused him of hiring a thug to assault Lovecruft and drag them into the street.

Lovecruft does not use Twitter to publish accurate statements and legitimate criticism. Rather, Lovecruft uses Twitter to assassinate the character of anybody who

1

questions Lovecruft. For this reason, and as summarized below, Lovecruft's motion to strike fails.

- <u>Not in Connection with Public Interest</u>: As an initial matter, Lovecruft cannot rely on the anti-SLAPP statute because Lovecruft did not publish the Tweets in connection with an issue of public interest. Rather, Lovecruft sought to turn a private dispute with Todd regarding Zcash into a public controversy by unilaterally accusing Todd of rape outside of any ongoing discussion of sexual assault.

- <u>Plaintiff's Evidence of Defamation</u>: Moreover, Todd's evidence demonstrates that Lovecruft published false and unprivileged Tweets, which have a natural tendency to injure Todd by accusing him of rape and sexual assault.

- <u>Plaintiff Is Not a Limited-Purpose Public Figure</u>: Contrary to Lovecruft's arguments, Todd is not a limited-purpose public figure. Todd did not inject himself into any controversy regarding Lovecruft's false claims that Todd sexually assaulted Lovecruft. While Lovecruft tries to tether the Tweets to Lovecruft's previous rape accusation against Jacob Applebaum, that controversy occurred years earlier and was unconnected to Todd—in fact, Todd publicly stated that he could not contribute to that debate.

- <u>Lovecruft Acted with Malice</u>: Under any standard, Lovecruft acted with malice when they published the Tweets because: a) Lovecruft knew that Todd had not raped or sexually assaulted Lovecruft, b) Lovecruft has a pattern and practice of falsely accusing others of rape and other crimes, c) Lovecruft has a vendetta against Todd for criticizing Zcash, and d) Lovecruft's supposed reliance on Jane Doe is not credible in light of Lovecruft's chronic pattern of lying about the most serious allegations, including in court proceedings.

For all of these reasons, the Court should deny Lovecruft's special motion to strike.

## BACKGROUND

**A.    Plaintiff Peter Todd and Defendant Isis Agora Lovecruft**

Plaintiff Peter Todd is a Bitcoin enthusiast and a leading developer of

1  cryptocurrency and blockchain software. (Declaration of Peter Todd in Support of

2  Plaintiff's Opposition to Defendant's Special Motion to Strike ("Todd Decl.") ¶2.) Todd is

3  highly respected in the cryptography and cryptocurrency sectors for his expertise in the

4  security properties of the Bitcoin network and other decentralized technologies. (Todd

5  Decl. ¶2.)

6       Defendant Sarah Michelle Reichwein *aka* Isis Agora Lovecruft is a self-described

7  "anarchist; hacker; once-upon-a-time theoretical physicist." (Todd Decl. ¶¶3–4 & Ex. A.)

8  Lovecruft previously worked for The Tor Project, Inc., the goal of which is to provide a

9  way of using the internet with as much privacy as possible. (Todd Decl. ¶5.) Like Todd,

10  Lovecruft regularly attends cryptography conferences. (Todd Decl. ¶6.)

11  **B.     Todd's Interactions with Lovecruft**

12       Todd first met Lovecruft on July 4, 2014 in Paris, France at the Tor Development

13  Meeting. (Todd Decl. ¶7.) Lovecruft presented at a small group session entitled "Bridging

14  the Gap." (Todd Decl. ¶7.) After Lovecruft completed their session, Todd introduced

15  himself to Lovecruft, and the two spoke about Bitcoin micropayments and Lovecruft's

16  cryptographic work. (Todd Decl. ¶7.)

17       Thereafter, Todd and Lovecruft developed a friendship, communicating through

18  social media platforms about personal and professional matters. (Todd Decl. ¶8.) Todd

19  and Lovecruft saw each other again on December 27, 2014 at the Chaos Communication

20  Congress in Hamburg, Germany, where they went out to dinner and dancing with others

21  after the conference sessions. (Todd Decl. ¶9.) Lovecruft, Todd, and others (including

22  one of Lovecruft's then-lovers) purchased tickets to travel to Berlin to celebrate New

23  Year's Eve together. (Todd Decl. ¶9.)

24       Over the next several months, Todd and Lovecruft regularly communicated by

25  email, XMPP (OTR), and social media and occasionally met in person. (Todd Decl. ¶10.)

26  For example, on January 30, 2015, Todd visited San Francisco, where Lovecruft and

27  Lovecruft's romantic partner, Mike Perry, were residing. (Todd Decl. ¶11.) Todd,

28  Lovecruft, and Perry went hiking and out to dinner; Lovecruft then invited Todd to spend

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1   the night at Lovecruft and Perry's apartment, which Todd did (sleeping on the couch,

2   while Lovecruft and Perry slept in the bedroom). (Todd Decl. ¶11.) When Todd returned

3   to San Francisco in March 2015, Lovecruft and Perry again invited Todd to stay at their

4   apartment, where they drank, danced, and listened to music. (Todd Decl. ¶12.)

5           Contrary to Lovecruft's declaration, Todd was not in San Francisco on or around

6   September 5, 2015. (Todd Decl. ¶13.) And although Todd traveled to San Francisco in

7   August 2015, Lovecruft's account of their interactions during this time is false. (Todd Decl.

8   ¶13.) More specifically, on August 22, 2015, Todd travelled to San Francisco to attend

9   SF Bitcoin Devs Meetup and for other professional reasons, and Todd stayed with his

10  friends, including Elizabeth Stark. (Todd Decl. ¶14.) On the night of August 24, Todd went

11  out to dinner with Lovecruft, Perry, and others. (Todd Decl. ¶14.) On August 26, 2015,

12  Todd planned to meet Lovecruft at the Workshop Café in San Francisco to work on Bitcoin

13  Core's Tor support (Todd Decl. ¶15.) Todd arrived at the café around 6:00 p.m., with

14  Lovecruft arriving approximately an hour-and-a-half later. (Todd Decl. ¶15.) Todd and

15  Lovecruft briefly discussed computer code. (Todd Decl. ¶15.) When the Workshop Café

16  closed at around 10:00 p.m., Todd and Lovecruft walked to Taqueria Cancun for dinner.

17  (Todd Decl. ¶15.) Todd and Lovecruft ordered their food in the restaurant but ate in the

18  public courtyard of the Social Security Administration building. (Todd Decl. ¶15.) Lovecruft

19  and Todd discussed both personal and professional matters while they ate, and Lovecruft

20  fed spare nachos to rats. (Todd Decl. ¶15.) At 11:30, Lovecruft hailed a cab, and Todd

21  walked to Elizabeth Stark's apartment. (Todd Decl. ¶15.) Todd made no sexual

22  statements to Lovecruft or anybody else during this time. (Todd Decl. ¶15.) Moreover,

23  Todd did not initiate any physical contact with Lovecruft during this time. (Todd Decl. ¶15.)

24          After this interaction, Todd and Lovecruft regularly communicated with each other

25  both publicly and privately, and Lovecruft's communications reflected no fear or dislike of

26  Todd. (Todd Decl. ¶¶16–17 & Exs. B–C.) In fact, on August 29, 2015 (three days after

27  Todd and Lovecruft had dinner at Taqueria Cancun), Todd, Lovecruft, and Perry went to

28  the beach and then to Lovecruft's apartment, where they watched the cartoon Gravity Falls

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1 and consumed alcohol. (Todd Decl. ¶16.)

2 On September 5, 2015, Lovecruft invited Todd to attend the 2015 Summer Tor

3 Dev Conference in Berlin, Germany. (Todd Decl. ¶18 & Ex. D.) Todd travelled to Germany

4 for the conference, and between September 29, 2015 and October 8, 2015, Todd and

5 Lovecruft interacted in personal and professional settings, including attending meetings,

6 going to nightclubs, dancing, and dining at restaurants. (Todd Decl. ¶18.) As an example,

7 on October 8, 2015, Lovecruft asked Todd to "hang out" with them in person in Berlin.

8 (Todd Decl. ¶18 & Ex. C.) After the Berlin meeting, Lovecruft continued to communicate

9 with Todd via email, Pond, XMPP (OTR), and social media about a variety of personal and

10 professional topics, including buying tickets to a conference, advice on travelling in China,

11 how Lovecruft's presentations went, and job prospects. (Todd Decl. ¶19 & Exs. B–C.) On

12 May 1, 2016, Lovecruft requested that Todd timestamp Lovecruft's blog post about

13 supposed FBI harassment. (Todd Decl. ¶20 & Ex. B.) And on May 25, 2016, Lovecruft

14 informed Todd that rape allegations against journalist and computer security researcher

15 Jacob Appelbaum were to be made public in the near future. (Todd Decl. ¶21 & Ex. B.)

16 **C.    Lovecruft's Numerous False Rape and Other Criminal Allegations Against**

17 **Third Parties**

18 Jacob Appelbaum: On June 13, 2016, Lovecruft publicly and falsely accused

19 Appelbaum of sexual assault and rape after he achieved more recognition in his academic

20 cryptography studies than Lovecruft and Lovecruft's lover, Henry de Valence.

21 (Declaration of Jacob Appelbaum in Support of Plaintiff's Opposition to Defendant's

22 Special Motion to Strike ("Appelbaum Decl.") ¶¶4–9 & Exs. A–D.; Todd Decl. ¶¶42–43 &

23 Ex. S.) Lovecruft published their allegations against Appelbaum in multiple online media.

24 (Appelbaum Decl. ¶¶4–10 & Exs. A–F; Todd Decl. ¶¶37–40 & Exs. M–Q.) On August

25 18, 2016, Todd posted the following statement on Twitter about Lovecruft's allegations

26 against Appelbaum: "See, as a relative outsider to that community I can't tell what is

27 true and what isn't. That's a big problem." (Todd Decl. ¶22 & Ex. E.)

28 Nadim Kobeissi: In February 2019, Lovecruft falsely accused fellow cryptographer

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

Nadim Kobeissi of rape and sexual assault in multiple posts on Twitter. (Declaration of Nadim Kobeissi in Support of Plaintiff's Opposition to Defendant's Special Motion to Strike ("Kobeissi Decl.") ¶7 & Ex. A.) Lovecruft published these accusations against Kobeissi on Twitter after Kobeissi expressed doubts about Lovecruft's allegations against Appelbaum. (Kobeissi Decl. ¶9.) Lovecruft's false statements about Kobeissi have substantially harmed him. (Kobeissi Decl. ¶10.)

Will Scott: On December 26, 2016, Lovecruft accused third party Will Scott of gang rape. (Todd Decl. ¶39 & Exs. O–P.) In response, Shari Steele, Board Member, Former Executive Director, and Former Legal Director of the Electronic Frontier Foundation stated:

> Your blog post is not consistent with the Tor community process or your own stated desire for restorative justice. You've lumped someone who didn't commit rape, has shown remorse, and went through a process of rehabilitation with those who would continue to do harm.

(Todd Decl. ¶¶34–36, 39 & Exs. J–L & O–P.)

Daniel Bernstein and Tanja Lange: Between 2015 and 2016, Professor Daniel Bernstein and Professor Tanja Lange served as academic advisors to PhD student Henry de Valence, who was also Lovecruft's lover. (Declaration of Daniel J. Bernstein in Support of Plaintiff's Opposition to Defendant's Special Motion to Strike ("Bernstein Decl.") ¶28; Todd Decl. ¶¶42–43 & Ex. S.) Bernstein and Lange also served (and currently serve) as academic advisors to Appelbaum. (Bernstein Decl. ¶7.) After Lovecruft accused Appelbaum of rape and sexual assault, de Valence published a statement falsely claiming that he had resigned from his PhD program "due to sexual harassment, bullying, blackmail, and physical harm as a result of their favorite student Jacob Appelbaum, as well as Tanja and Dan's total abdication of their responsibility to manage the workplace environment in their research group." (Todd Decl. ¶¶42–43 & Ex. S.) Thereafter, Lovecruft falsely claimed that:

> "His academic advisors have taken steps to punish and threaten reprisal— for myself & others within academia—for our actions #WhyIDidntReport [¶] Let's be clear: Jacob is a sociopath narcissist, and his advisors are tenured academics actively covering up for other reports of abuse."

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1   (Lovecruft Decl. ¶16 & Ex. 7.) Lovecruft's statements are false. (Bernstein Decl. *passim*.)

2         <u>John Gilmore</u>: In October 2017, Lovecruft accused computer pioneer and co-

3   founder of the Electronic Frontier Foundation, John Gilmore, of hiring a thug to assault

4   Lovecruft and drag them into the street. (Todd Decl. ¶36 & Ex. L.) At the same time,

5   Lovecruft accused Gilmore of conspiring with this thug to store illegal substances in

6   Gilmore's house. (Todd Decl. ¶36 & Ex. L.) Notably, Lovecruft made these accusations

7   shortly after Gilmore questioned their rape allegations against Appelbaum. (Todd Decl.

8   ¶37 & Ex. M.)

9   **D.**    **Lovecruft's Rape and Sexual Assault Allegations Against Peter Todd**

10         Declarant Bryce Wilcox *aka* Zooko ("Wilcox") is the founder and CEO of Zcash, a

11   cryptocurrency business. (Todd Decl. ¶24.) Lovecruft is close friends with declarant

12   Wilcox, and Lovecruft themself is a contributor to the Zcash security protocols. (Todd

13   Decl. ¶¶24, 41 & Exs. F & R.) On May 14, 2018, Todd published a Tweet criticizing the

14   security of Zcash. (Todd Decl. ¶25 & Ex. G.) Within hours, Lovecruft publicly published

15   the following communication on Github:

16       "peter todd is complete trash, and not just for his idiotic takes on
17       privacy and security, he's also an abuser who doesn't seem to
          understand the word 'no' and harasses rape victims (and he's
18       managed to be the only person I've ever had to block on github)."

19   (Todd Decl. ¶26 & Ex. H.) On February 5, 2019, Todd again published several statements

20   on Twitter identifying vulnerabilities in Zcash's cryptocurrency model. (Todd Decl. ¶27 &

21   Ex. I.) Just a few hours later, Lovecruft published the Tweet:

22       "this is not even touching upon the stories of the rape and assault
          survivors of you and @petertodd and @ioerror and you all have been
23       seen to behave conveniently alike and seen to dutifully protect one
          another 🙃"

24   (Todd Decl. ¶¶4, 28 & Ex. A.) Three days (and five Tweets) later, Lovecruft published the

25   following Tweet:

26       "i love watching the men in my industry who've sexually abused me
27       and many others squirm as i take them out one by one while they
          nervously await their turn [¶] hahahahahahahaha eat goat dung you
28       epoxy brained cowards"

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

(Todd Decl. ¶¶4, 29 & Ex. A.) On February 20, 2019, Defendant published the following Tweet:

> "Nadim Kobeissi is a serial rapist and abuser who defends other rapists including Jacob Appelbaum and Peter Todd and in 2012 he grabbed my face and force kissed me at a conference and i absolutely believe the multiple survivors i've personally spoken with since then."

(Todd Decl. ¶¶4, 30 & Ex. A.) And on February 20, 2019, Defendant published the following Tweet in response to a Tweeted question from Twitter user @_willish:

> [@_willish:] "Peter todd is a rapist?"

> "yes, similar to Nadim, i personally have a story about Peter Todd and i've personally spoken with survivors with absolutely awful and horrifying reports who are terrified of him and of coming forward (rightly so) [¶] i however am not afraid and shitty dudes are going down"

(Todd Decl. ¶¶4, 31 & Ex. A.)

Lovecruft's Tweets are false. (Todd Decl. ¶33.) Todd has never raped or sexually assaulted Lovecruft or anybody else. (Todd Decl. ¶33.) Rather, Lovecruft made up these allegations in response to Todd's criticism of Zcash. (Todd Decl. ¶33.)

Similarly, Lovecruft and Wilcox fabricated the statements in Lovecruft's declaration, Wilcox's declaration, and the declaration of Jane Doe. (Todd Decl. ¶33.) Contrary to Jane Doe's declaration, Todd did not rape, assault, or coerce anybody into having sex with him. (Todd Decl. ¶33.)

## EVIDENTIARY OBJECTIONS

Todd objects to Lovecruft's evidence as follows:

- <u>Declaration of Jane Doe (entirety)</u>. "Absent extraordinary circumstances, witnesses do not testify anonymously under our system of laws." *Diamond Pleasanton Enter., Inc. v. City of Pleasanton*, No. 12-CV-00254-WHO, 2015 WL 74946, at *1 (N.D. Cal. Jan. 5, 2015); *see Doe v. Los Angeles Unified Sch. Dist.*, No. 216-CV-00305CASJEMX, 2017 WL 797152, at **8–9 (C.D. Cal. Feb. 27, 2017) (sustaining objections to Doe declarations). Lovecruft has not sought a protective order to keep Jane Doe's name under seal, nor has Lovecruft filed any document identifying the signator to

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

Jane Doe's declaration. "Without any record whatsoever of a witness's identity or their signature, a declarant cannot be held to their statements under 'penalty of perjury.'" *See Los Angeles Unified Sch. Dist.*, 2017 WL 797152 at *9.

- Declaration of Bryce Wilcox ¶¶4–6: These Paragraphs contain hearsay (i.e. statements of anonymous "Friend," Lovecruft, and Jane Doe) and are not subject to any exception to the hearsay rule. As such, these portions of the Wilcox declaration are inadmissible under Fed. R. Evid. 802.

- Declaration of Ben Rosenfeld ¶2: This Paragraph contains hearsay (i.e. statements of Jane Doe) and is not subject to any exception to the hearsay rule. As such, this portion of the Ben Rosenfeld Declaration is inadmissible under Fed. R. Evid. 802.

- Declaration of Isis Lovecruft ¶¶13, 23 & Exs. 2, 9: Exhibit 2 to the Lovecruft Declaration is supposedly a Twitter direct message exchange between Lovecruft and a "friend" discussing Todd. Exhibit 9 to the Lovecruft declaration is supposedly a copy of a Signal message exchange between Lovecruft and Jane Doe. However, Exhibits 2 and 9 are facially incomplete, do not refer to Todd, and do not identify the person communicating with Lovecruft. Exhibits 2 and 9 are thus inadmissible under Fed. R. Evid. 901. *See, e.g.*, *Pogrebnoy v. Russian Newspaper Distribution, Inc.*, 693 F. App'x 650, 651 (9th Cir. 2017) (the district court properly excluded partial transcript that included numerous ellipses).

**ARGUMENT**

**A.    Legal Standard**

California courts have emphasized that anti-SLAPP only applies to a cause of action that lacks minimal merit. *See Manzari v. Associated Newspapers Ltd.*, 830 F.3d 881, 887 (9th Cir. 2016). Thus, a plaintiff is not required to *prove* the specified claim to the court. *See id*. Rather, and so as to avoid depriving the plaintiff of a jury trial, the appropriate inquiry is whether the plaintiff has stated and substantiated a legally sufficient claim. *See id*. To determine whether a plaintiff has substantiated a legally sufficient claim, a court must look to the pleadings and affidavits presented by both parties; however, the court does not weigh credibility nor evaluate the weight of the evidence. *See id*. Instead,

a court must accept as true all evidence favorable to the plaintiff and assess the defendant's evidence only to determine if it defeats the plaintiff's submission as a matter of law. *See id*.

The first step in analyzing an anti-SLAPP motion is to determine whether the defendant has successfully made a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech. *See Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 967 (N.D. Cal. 2013), *aff'd*, 609 F. App'x 497 (9th Cir. 2015). The anti-SLAPP statute defines such an act to include, *inter alia*, "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest." *See id*.

If a court finds that the defendant made the requisite showing that the claim is within the scope of the anti-SLAPP statute, the burden shifts to the plaintiff to establish a "probability" of prevailing on the claim by making a prima facie showing of facts that would, if proved, support a judgment in the plaintiff's favor. *See Kashian v. Harriman*, 98 Cal. App. 4th 892, 906 (2002). At the second step of the anti-SLAPP inquiry, the required probability that the plaintiff will prevail is not high; the plaintiff must only establish "minimal merit." *See Hilton v. Hallmark Cards*, 599 F.3d 894, 908 (9th Cir. 2010). A court may consider the defendant's opposing evidence, but only to determine if such evidence defeats the plaintiff's showing as a matter of law; that is, a court must not weigh the evidence or make credibility determinations. *See Manzari*, 830 F.3d at 887; *Kashian*, 98 Cal. App. 4th at 906. In addition, the court will only consider evidence that would be admissible at trial in determining plaintiff's probability of prevailing. *See id*.

**B.    The Tweets do not involve an issue of public concern because they solely relate to a private dispute between Lovecruft and Todd.**

As an initial matter, Lovecruft's Tweets about Todd do not involve a matter of public concern or relate to an ongoing controversy. More specifically, Lovecruft cannot turn her private dispute with Todd regarding Zcash into a public matter by simply publishing rape accusations on the internet.

10

California's anti-SLAPP law does not define "an issue of public interest." *See Grenier v. Taylor*, 234 Cal. App. 4th 471, 481–82 (2015). However, California courts have established the following guiding principles to distinguish a public interest from a private dispute:

- "Public interest" does not equate with mere curiosity;

- A matter of public interest should be something of concern to a substantial number of people; a matter of concern to a speaker and a relatively small, specific audience is not a matter of public interest;

- The assertion of a broad and amorphous public interest that is generally connected to a specific dispute is not sufficient;

- The focus of the speaker's conduct should be the public interest rather than a mere effort to gather ammunition for another round of a private controversy;

- A person cannot turn otherwise private information into a matter of public interest by communicating it to a large audience; and

- Finally, a defendant cannot, through their own conduct, create a defense by making the plaintiff a public figure.

*See id.*

Several cases have explained that simply tethering a defamatory statement to a general topic of public interest does not transform that statement into a matter of public interest within the scope of anti-SLAPP. *See, e.g.*, *Jackson v. Mayweather*, 10 Cal. App. 5th 1240, 1252–55 (2017) (expressing doubt that the defendant's statement that the plaintiff had an abortion along with his avowed opposition to "killing babies" contributed to the public debate on women's reproductive rights)*; Mann v. Quality Old Time Service, Inc.*, 120 Cal. App. 4th 90, 111 (2004), *disapproved on other grounds by Baral v. Schnitt*, 1 Cal. 5th 376 (2016) (defendant's statements that the plaintiff had falsified data and plagiarized work were only remotely related to the broader subject of global warming and climate change); *Bikkina v. Mahadevan*, 241 Cal. App. 4th 70, 84 (2015) ("By focusing on society's general interest in the subject matter of the dispute instead of the specific speech

or conduct upon which the complaint is based, defendants resort to the oft-rejected, so-called 'synecdoche theory of public issue in the anti–SLAPP statute,' where '[t]he part [is considered] synonymous with the greater whole.'"); *Consumer Justice Center v. Trimedica Int'l, Inc.*, 107 Cal. App. 4th 595, 601 (2003) (advertising claims relating to promised benefits of herbal supplement did not concern an issue of public interest even if a broader discussion of alternative medicine and herbal supplements might; "[i]f we were to accept [defendant]'s argument that we should examine the nature of the speech in terms of generalities instead of specifics, then nearly any claim could be sufficiently abstracted to fall within the anti-SLAPP statute"); *Dual Diagnosis Treatment Center, Inc. v. Buschel*, 6 Cal. App. 5th 1098, 1105–06 (2016) ("[a]lmost any statement, no matter how specific, can be construed to relate to some broader topic"; finding that status of rehabilitation facility was not sufficiently connected to broader topic of consumer protection).

Here, Lovecruft cannot transform their false accusations of rape against Todd into a general debate about sexual assault. First, Lovecruft's Tweets are pure invective against Todd; the Tweets contain absolutely no exploration, analysis, or discussion of "sexual harassment and violence against women [as a] pressing public concern." (Mtn. at 9:4; Todd Decl. ¶4 & Ex. A.) Second, Lovecruft did not publish their Tweets in the context of an ongoing public controversy. Rather, Lovecruft published the Tweets after Todd criticized Wilcox's and Lovecruft's Zcash business. (Todd Decl. ¶¶4, 25–27 & Exs. A, G–I.) Finally, and most importantly, Lovecruft cannot turn a private controversy into a public matter by publishing accusations on the internet. California courts have consistently held that a defendant charged with defamation cannot, through their own conduct, create a defense by creating a public issue. *See Grenier*, 234 Cal. App. 4th at 481–82; *Harkonen v. Fleming*, 880 F. Supp. 2d 1071, 1081 (N.D. Cal. 2012); *Hailstone v. Martinez*, 169 Cal. App. 4th 728, 736 (2008). To hold otherwise would mean that any defendant could turn any private matter into a public concern simply by communicating it to a large number of people. *See Grenier*, 234 Cal. App. 4th at 481–82.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1    Lovecruft argues that they published the Tweets as part of an ongoing controversy

2    in the cryptography community about alleged misconduct by Jacob Appelbaum.

3    Lovecruft's argument fails. The Appelbaum controversy arose in mid-2016, nearly three

4    years before Lovecruft's Tweets. That controversy was not ongoing when Lovecruft

5    published the Tweets. *See Dual Diagnosis Treatment Center, Inc.*, 6 Cal. App. 5th at

6    1105–06. Moreover, Todd was not involved in the Appelbaum controversy, even back in

7    mid-2016. (Todd Decl. ¶22 & Ex. E.) In short, Lovecruft did not publish the Tweets as part

8    of the Appelbaum controversy. *See Talega Maint. Corp. v. Standard Pac. Corp.*, 225 Cal.

9    App. 4th 722, 734 (2014) (where controversy is of interest to a limited community, the

10   speech must occur in the context of an *ongoing* controversy, dispute, or discussion to be

11   within the scope of anti-SLAPP). Rather, Lovecruft published the Tweets just hours after

12   Todd criticized Zcash.

13   In summary, Lovecruft has failed to show that the Tweets were made in connection

14   with an issue of public interest, where they are pure invective, directed at a private figure,

15   and were not part of any ongoing controversy.

16   **C.    Todd has established all of the elements of his defamation claim with**

17   **admissible evidence.**

18   The elements of a defamation claim are (1) a publication that is (2) false, (3)

19   defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special

20   damage. *See Laker v. Bd. of Trustees of California State Univ.*, 32 Cal. App. 5th 745, 763

21   (2019). A publication has a natural tendency to injure if it contains a charge by implication

22   from the language employed by the speaker so that a listener could understand the

23   defamatory meaning without the necessity of knowing extrinsic explanatory matter. *See*

24   *McGarry v. Univ. of San Diego*, 154 Cal. App. 4th 97, 112 (2007).

25   Todd has submitted evidence establishing each of these elements.

26   • Lovecruft admits that they published the Tweets on Lovecruft's personal Twitter

27   account. (Lovecruft Decl. ¶¶24–25); Todd Decl. ¶¶4, 28–31 & Ex. A.)

28   • The Tweets are false and defamatory in that they falsely accuse Todd of raping

13

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

and sexually assaulting Lovecruft and others. (Todd Decl. ¶33.) Importantly, the Tweets both accuse Todd of assaulting and/or raping Lovecruft (i.e. "I personally have a story about Peter Todd") and of assaulting and raping others ("I've personally spoken with survivors . . ."). (Todd Decl. ¶¶4, 28-31 & Ex. A.)

- There is no arguable privilege that would protect the Tweets, and in any event, privilege is treated as an affirmative defense to a claim of defamation. *See Beroiz v. Wahl*, 84 Cal. App. 4th 485, 492 (2000); *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 133 Cal. App. 4th 658, 676 (2005) (defendant bears burden of proof on affirmative defense).

- The Tweets have a natural tendency to injure Todd in that they accuse him of rape and sexual assault. "False statements that accuse the plaintiff of criminal conduct are defamatory on their face." *Grenier*, 234 Cal. App. 4th at 486.

Lovecruft argues that some of the Tweets are not defamatory per se. Lovecruft's argument fails. First, Lovecruft disputes that the following Tweet is defamatory per se because "it is a statement directed at a third party, not Todd . . .":

> "This is not even touching upon the stories of the rape and assault survivors of you and @petertodd and @ioerror and you all have been seen to behave conveniently alike and seen to dutifully protect one another."

(Mtn. at 17:16–21.) Lovecruft's argument does not make sense. The Tweet specifically accuses Peter Todd of rape and sexual assault. In determining whether a statement is defamatory, a court must look to both what is explicitly stated and what insinuation and implication can be reasonably drawn from the statement. *See Issa v. Applegate*, 31 Cal. App. 5th 689, 703 (2019). The pertinent question is whether a reasonable factfinder could conclude that the statements as a whole, or any of their parts, directly make or sufficiently imply a false assertion of defamatory fact that tended to injure plaintiff's reputation. *See id*. No reasonable person would view this Tweet as stating or implying anything other than that Todd has raped and sexually assaulted others.

Lovecruft next argues that the following Tweet is not defamatory because it is too

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

generalized, referring only to vague reports and stories. (Mtn. at 16:15–16.) Lovecruft

omits the preceding Tweet in their motion, which is set forth below for completeness:

> [@_willish:] "Peter todd is a rapist?"

> "yes, similar to Nadim, i personally have a story about Peter Todd and i've personally spoken with survivors with absolutely awful and horrifying reports who are terrified of him and of coming forward (rightly so) [¶] i however am not afraid and shifty dudes are going down."

(Todd Decl. ¶¶4, 31 & Ex. A.) This Tweet specifically accuses Todd of being a rapist.

In determining whether a statement is defamatory, a court must apply a totality of the

circumstances test, first examining the language of the statement itself, and then

examining the context in which the statement was made. *See Kaelin v. Globe Commc'ns*

*Corp.*, 162 F.3d 1036, 1041 (9th Cir. 1998); *Dickinson v. Cosby*, 17 Cal. App. 5th 655,

686 (2017). A defamatory meaning must be found, if at all, in reading the publication as

a whole. *See Manzari*, 830 F.3d at 890. Viewing this Tweet in context, no reasonable

person could view the Tweet as stating anything other than that Todd is a rapist.

Finally, Lovecruft argues that the following Tweet is not defamatory because "it

does not even mention him—and there is no indication that the statement was referring

to him":

> "i love watching the men in my industry who've sexually abused me and many others squirm as I take them out one by one while they nervously await their turn [¶] hahahahahahahaha eat goat dung you epoxy brained cowards."

As noted above, in determining whether a statement is defamatory, the Court must

examine the language of the statement itself and the context in which it was made.

Here, three days before publishing this Tweet (and just four Tweets earlier), Lovecruft

expressly accused Todd of rape. (Todd Decl. ¶¶4, 28 & Ex. A.) A reasonable person

would understand that the subsequent reference to "men in my industry who've

sexually abused me" refers to Todd.

Because the Tweets are defamatory on their face, Todd has established his claim

15

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1  for defamation

2  **D.      Todd is not a limited-purpose public figure where he did not inject himself**

3  **into any controversy regarding allegations of his sexual conduct.**

4  When a defamation action is brought by an all-purpose public figure or a limited-

5  purpose public figure, the plaintiff must show that the defendant acted with actual malice

6  in publishing the defamatory statement. *See Cabrera v. Alam*, 197 Cal. App. 4th 1077,

7  1091 (2011). Lovecruft claims that Todd is a limited-purpose public figure because Todd

8  published a couple of Tweets about the rape allegations against third party Jacob

9  Appelbaum two-a-half years before Lovecruft's defamatory Tweets. Lovecruft's argument

10 fails.[1]

11 In considering whether a person is a limited-purpose public figure, a court must

12 examine the nature and extent of his participation in the particular controversy giving rise

13 to the defamation. *See Rudnick v. McMillan*, 25 Cal. App. 4th 1183, 1190 (1994); *Addison*

14 *v. City of Baker City*, 258 F. Supp. 3d 1207, 1241 (D. Or. 2017), *aff'd*, 758 F. App'x 582

15 (9th Cir. 2018). This Court has previously set forth a three-part test for determining

16 whether an individual is a limited-purpose public figure: (1) there must be a public

17 controversy, which means the issue was debated publicly and had foreseeable and

18 substantial ramifications for nonparticipants; (2) the plaintiff must have undertaken some

19 voluntary act through which he or she sought to influence resolution of the public issue;

20 and (3) the alleged defamation must be germane to the plaintiff's participation in the

21 controversy. *See Harkonen*, 880 F. Supp. 2d at 1080; *Grenier*, 234 Cal. App. 4th at 484*;*

22 *Cabrera*, 197 Cal. App. 4th at 1092. Whether an individual is a public figure is a question

23 of law that must be assessed through a totality of the circumstances. *See Manzari*, 830

24 F.3d at 888.

25 California courts require a "fairly high" threshold of public activity to elevate a

26 —————————————

27 [1] Lovecruft does not argue that Todd is an all-purpose public figure. Nor could Lovecruft make such an argument because Todd has not achieved such pervasive fame or notoriety that he has become a household name that should be considered a public figure in all contexts. *See Cabrera*, 197 Cal. App. 4th at 1091.

28

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

private person to limited-purpose public figure status. *Hufstedler, Kaus & Ettinger v. Superior Court*, 42 Cal. App. 4th 55, 69 (1996). To that end, in order to be considered a limited-purpose public figure, the plaintiff must have thrust himself into the forefront of a particular public controversy in order to influence the resolution of the issues involved. *See Reader's Digest Assn. v. Superior Court*, 37 Cal. 3d 244, 254–55 (1984); *Nadel v. Regents of Univ. of California*, 28 Cal. App. 4th 1251, 1269 (1994). The mere involvement of a person in a matter that the media deems to be of interest to the public does not, in and of itself, transform a person into a public figure for the purpose of a subsequent libel action. *See Reader's Digest Assn.*, 37 Cal. 3d at 254. In the same vein, a private individual is not automatically transformed into a public figure just by virtue of becoming involved in or associated with a matter that attracts public attention. *See Z.F. v. Ripon Unified Sch. Dist.*, 482 F. App'x 239, 240–41 (9th Cir. 2012). Rather, a defendant claiming that the plaintiff is a limited-purpose public figure must show more than mere newsworthiness to justify application of the demanding burden of the actual malice standard. *See id.*

California courts have required far more purposeful interjection into an active controversy than present here before finding limited-public figure status. For example, in *Nadel v. Regents of Univ. of California*, 28 Cal. App. 4th 1251, 1269 (1994), the court found that two defamation plaintiffs, who had opposed the construction of volleyball court, were limited-purpose public figures because they had spoken publicly at city council meetings and demonstrations about the issue, had written letters to the editor of a local newspaper, a university, and the city, had spoken to media reporters, and had regularly staffed an "information table" on Sunday afternoons in the park. Similarly, in *Manzari*, 830 F.3d at 888, the Ninth Circuit found that a former model and pornographic actress was a limited-purpose public figure regarding her HIV positive-status while she acted in pornography because she operated her own pornographic website, her image had been downloaded millions of times from her website, she had enjoyed extensive news coverage related to her success in performing in and marketing online pornography, and she had given numerous newspaper interviews and testified before Congress. By

17

1   contrast, in *Grewal v. Jammu*, 191 Cal. App. 4th 977, 988 n.7 (2011), the court held that

2   a defamation plaintiff, who had co-founded a religious temple, who was an active member

3   of the temple, and who had spoken as an ordinary congregant, had not injected himself

4   into a public controversy about his fitness to serve as the president of the Temple.

5       In the instant case, Todd did not transform himself into a limited-purpose public

6   figure by voluntarily thrusting himself into a debate about his alleged sexual assault and

7   rape of others or the topic of sexual assault generally. As discussed above, Lovecruft

8   published the Tweets accusing Todd of sexual assault and rape after Todd criticized

9   Wilcox's Zcash business. (Todd Decl. ¶¶25–31 & Exs. A, G–I.) Under no construction of

10  the scope of a limited-purpose public figure could Todd's Tweets about Zcash be

11  considered germane to Lovecruft's Tweets accusing Todd of sexual assault and rape.

12      Lovecruft argues that Todd became a limited-purpose public figure by voluntarily

13  injecting himself into the general topic of rape and sexual assault. (Mtn. at 12:24–27.)

14  More specifically, Lovecruft argues that in mid-2016, Todd became a limited-purpose

15  public figure when he published two Tweets about Lovecruft's rape accusations against

16  Jacob Appelbaum, and that Lovecruft's 2019 Tweets accusing Todd of rape and sexual

17  assault were part of the same ongoing controversy. (Mtn. at 12:24–13:7.) Lovecruft's

18  argument fails. Todd's Tweets about the Appelbaum controversy were posted two-and-

19  a-half years before Lovecruft published the Tweets at issue. (Todd Decl. ¶¶4, 38 & Exs.

20  A, N.) Lovecruft has submitted no evidence that Todd in any way participated in the

21  Appelbaum controversy, let alone sought to influence the resolution of that controversy,

22  during this two-and-a-half-year period, other than with his initial two Tweets. (Mtn. at

23  12:24–13:7.) *See Addison*, 258 F. Supp. 3d at 1241 (statements about a controversy that

24  occurred six years ago did not transform plaintiff into a public figure; "Limited purpose

25  public figures are exactly that—public figures for a limited purpose.").

26      Moreover, even if Todd had voluntarily injected himself into the Appelbaum

27  dispute, that involvement did not transform Todd into a limited-purpose public figure for

28  all debates relating to rape and sexual assault generally. Finally, Todd's Tweets could not

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1   be construed as a purposeful interjection in an effort to influence resolution of the

2   Appelbaum controversy (a requirement for limited-purpose public figure status). Rather,

3   Todd's Tweets stated only that Todd did not know what to believe about the public

4   accusations against Appelbaum. (Todd Decl. ¶22 & Ex. E.) In summary, Lovecruft's

5   unprompted Tweets about Todd, published years after the Appelbaum controversy, have

6   no relation to that controversy

7        Most importantly, to hold that an individual who makes a few isolated statements

8   about a public controversy transforms himself into a limited-purpose public figure for

9   perpetuity would fundamentally undermine the goal of California's anti-SLAPP statute and

10  the First Amendment, which seek to encourage continued participation in matters of

11  public significance. *See* Civ. Proc. Code section 425.16. If the Court were to adopt

12  Lovecruft's proposed standard, anyone who made any statement, in any limited manner,

13  about any public issue, would be indefinitely transformed into a limited-purpose public

14  figure.

15  **E.    Under any standard, Lovecruft acted with malice when they fabricated the**

16  **facts in the Tweets and their filings with this Court.**

17       Before turning to the evidence of Lovecruft's malice, it is important to recognize

18  that the Tweets convey two distinct defamatory messages: (1) that Todd sexually

19  assaulted and/or raped Lovecruft; and (2) that Todd sexually assaulted and/or raped

20  multiple other people. The Tweets convey both of these messages because Lovecruft

21  refers to Lovecruft "personally hav[ing] a story about Peter Todd" and to the "rape and

22  assault survivors" of Todd. (Todd Decl. ¶¶4, 31 & Ex. A.)

23       In a defamation action, a public figure plaintiff must prove that the defendant made

24  the defamatory statement with actual malice—i.e. with knowledge that the statement was

25  false or with reckless disregard as to whether it was false. *See McGarry*, 154 Cal. App.

26  4th at 114. In contrast, a private figure plaintiff need only prove that the defendant acted

27  negligently in making the defamatory statement—i.e. whether a reasonably prudent

28  person would have published, or would have investigated before publishing, the

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1    defamatory statement. *See id.* Because Todd has shown that Lovecruft published the

2    Tweets with malice, he has satisfied his burden under either standard. *See Bikkina*, 241

3    Cal. App. 4th at 89 (finding of actual malice generally includes finding of negligence).

4          In analyzing malice at the anti-SLAPP stage, the Court must not weigh the

5    evidence. *See Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 598–99 (9th Cir. 2010).

6    Rather, the Court must determine whether Todd has established a minimal level of legal

7    sufficiency and triability. *See id.* Even though a public figure plaintiff must ultimately

8    demonstrate malice by clear and convincing evidence, at the anti-SLAPP stage, the

9    plaintiff need show only that the claim (including the malice element) has "minimal merit";

10   i.e. a probability that he will later be able to produce clear and convincing evidence. *See*

11   *id.*

12         A plaintiff may establish malice by circumstantial or direct evidence. *See*

13   *Overstock.com, Inc. v. Gradient Analytics, Inc.,* 151 Cal. App. 4th 688, 709 (2007). And

14   because direct evidence of malice is extremely difficult to obtain, actual malice is typically

15   proved by circumstantial evidence, evaluated under the totality of the circumstances

16   surrounding the publication. *See D.A.R.E Am. v. Rolling Stone Magazine*, 101 F. Supp.

17   2d 1270, 1277–78 (C.D. Cal. 2000), *aff'd sub nom. D.A.R.E. Am. v. Rolling Stone*

18   *Magazine*, 270 F.3d 793 (9th Cir. 2001). "Evidence of negligence, of motive and of intent

19   may be adduced for the purpose of establishing, by cumulation and by appropriate

20   inferences, the fact of a defendant's recklessness or of his knowledge of falsity." *Young*

21   *v. CBS Broad., Inc.*, 212 Cal. App. 4th 551, 563 (2012) (internal bracketing omitted); *see*

22   *Reader's Digest Assn.*, 37 Cal. 3d at 257–58. Factors such as the "failure to investigate,

23   anger and hostility toward the plaintiff, reliance upon sources known to be unreliable, or

24   known to be biased against the plaintiff. . . indicate that the publisher himself had serious

25   doubts regarding the truth of his publication." *Young*, 212 Cal. App. 4th at 563; *see also*

26   *Evans v. Unkow*, 38 Cal. App. 4th 1490, 1497 (1995) (reliance solely on a source known

27   to be hostile toward the plaintiff may support a finding of reason to doubt the source's

28   veracity, and hence constitutional malice).

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

KRONENBERG ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

Direct evidence of malice includes instances where "a story is fabricated by the defendant [or] is the product of his[, her, or their] imagination," which can be shown by contradictory testimony proffered through declarations. *Christian Research Inst. v. Alnor*, 148 Cal. App. 4th 71, 93 (2007) (citing *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968)). For example, in *Christian Research*, a religious organization brought a defamation action against a former employee who published an online article claiming that the organization was the focus of a federal criminal mail fraud investigation. *See id.* at 76–77. In support of his anti-SLAPP motion, the defendant submitted a declaration stating he called the postal inspector's office and spoke with "Debra," who told him that the organization was being investigated for fraud. *Id.* Discussing the types of evidence that would demonstrate malice, the court opined that the plaintiffs could "submit[] a declaration from an official at the . . . postal inspector's office that no one named Debra worked there during the time in question, or a declaration from Debra stating she spoke with [the defendant] but did not tell him her office was investigating [the organization]." *See id.* at 93.

Lovecruft acted with malice as to all aspects of the Tweets because Lovecruft knew the Tweets were false when they published them. Regarding the statements that Todd abused or raped Lovecruft, the Tweets are false and Lovecruft knew they were false because they concerned Lovecruft's personal experience. Todd never engaged in any conduct toward Lovecruft that could be viewed in any context as rape or assault. (Todd Decl. ¶33.) Rather, the Tweets and Lovecruft's declaration in this respect are complete fabrications. (Todd Decl. ¶¶4, 26–33 & Ex. A, G–I.) Like the evidence discussed by the *Christian Research* Court, the Todd declaration directly rebuts Lovecruft's defamatory statements and establishes Lovecruft's malice. (Todd Decl. ¶¶4, 26–33 & Ex. A, G–I.)

The falsity of Lovecruft's Tweets and declaration is further highlighted by the substantial circumstantial evidence of malice. First, as discussed above, Lovecruft had a motive to assert false allegations against Todd: namely, Lovecruft published the Tweets after Todd criticized Bryce Wilcox's and Lovecruft's Zcash business. (Todd Decl. ¶¶23–31 & Exs. F–I.) Next, and contrary to Lovecruft's declaration, the communications

21

between Lovecruft and Todd that occurred after the supposed assault on Lovecruft show that Lovecruft and Todd maintained a friendly relationship, which indicates the absence of a sexual assault or rape. (Todd Decl. ¶17 & Exs. B–C.) In fact, following the supposed assault on Lovecruft, and despite Lovecruft's claim that "[f]rom that day forward, I sought to avoid Mr. Todd," Lovecruft thereafter sought to "hang out" with Todd. (Todd Decl. ¶17 & Ex. C.) Lovecruft's communications with Todd after the alleged assault further demonstrate that Lovecruft concocted the Tweets to exact revenge against Todd for criticizing Zcash. (Todd Decl. ¶33, *passim.*)

Lovecruft's lack of credibility is further illustrated by their history of routinely and falsely accusing men and women of sexual assault, rape, and other crimes when those men and women do not support Lovecruft's position. In or around June 2016, Lovecruft falsely accused Jacob Appelbaum of sexual assault and/or rape when Appelbaum was advancing in his academic studies faster than Lovecruft and Lovecruft's romantic partner Henry de Valence. (Applebaum Decl. ¶¶4–9; Todd Decl. ¶¶37–38, 42–43 & Exs. M–Q, S.) When third party Nadim Kobeissi raised doubts about Lovecruft's accusations against Appelbaum, Lovecruft falsely accused Kobeissi of rape and sexual assault. (Kobeissi Decl. ¶¶7, 9.) When the academic advisors of Appelbaum and de Valence did not condemn Appelbaum after Lovecruft accused him of rape, Lovecruft falsely claimed that they had retaliated against, harassed, and threatened de Valence and Lovecruft. (Bernstein Decl. *passim*; Lovecruft Decl. ¶16 & Ex. 7.) Another time, Lovecruft accused third party Will Scott of gang rape. In response, the Electronic Frontier Foundation publicly stated "[y]ou've lumped someone who didn't commit rape . . ." (Todd Decl. ¶¶35, 39 & Exs. K, O–P.) And after third party and internet pioneer John Gilmore said that Lovecruft's allegations against Applebaum caused a "trial-by-rumour," Lovecruft accused Gilmore of engaging a thug to assault Lovecruft and drag them into the street. (Todd Decl. ¶¶36–37 & Exs. L–M.) Given Lovecruft's complete disregard for the truth, Lovecruft's testimony is not credible.

Knowing that their history of false accusations against men and women would be

looked upon with skepticism, it is not surprising that Lovecruft sought out or fabricated other "evidence" to support their version of events. In addition to Lovecruft's complete lack of credibility, other evidentiary issues make Lovecruft's account of these events even more suspect. For instance, in the Twitter and Signal messages where Lovecruft claims to discuss Todd's supposed actions, neither party identifies Todd by name at any point. (Lovecruft Decl. ¶¶13, 23 & Exs. 2, 9.) Moreover, both Exhibits 2 and 9 to the Lovecruft declaration are facially incomplete, as the screenshots displayed therein include select portions of the conversations and clearly omit content from the beginning and end. (Lovecruft Decl. ¶¶13, 23 & Exs. 2, 9.) This is especially notable because while Lovecruft's declaration devotes an entire page explaining the details that Jane Doe supposedly relayed to Lovecruft on December 15, 2018, none of these details appear in Exhibit 9, which Lovecruft claims are screenshots of that exchange. (Lovecruft Decl. ¶23 & Ex. 9). And while Lovecruft implies that they obtained this evidence from their own records, the arrangement of the messages and the image of Lovecruft on the top left corner of the screenshots in Exhibit 9 indicate that they were not taken from Lovecruft's phone or other device belonging to Lovecruft. (Lovecruft Decl. ¶23 & Ex. 9.)

Given the discrepancies and contradictions in Lovecruft's declaration, Lovecruft attempts to shift the Court's attention to the declaration of Jane Doe. However, Jane Doe's declaration was either completely fabricated by Lovecruft or by an accomplice of Lovecruft. This fabrication of Jane Doe's declaration is evidenced by the fact that the declaration is completely false; Todd has never raped or sexually assaulted any person, let alone under the circumstances described in Jane Doe's declaration. (Todd Decl. ¶33.) Given that Jane Doe's declaration is completely fabricated, and given that Lovecruft herself has time-and-again fabricated allegations of sexual assault and rape against Todd and others, it is simply not credible that Lovecruft relied in good faith on Jane Doe's false statements in publishing the Tweets. Rather, given Lovecruft's pattern and practice of working with others to publish falsehoods about rape and sexual assault (including with declarant Bryce Wilcox), Lovecruft likely influenced, if not completely fabricated, Jane

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
SPECIAL MOTION TO STRIKE (ANTI-SLAPP)**

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1   Doe's false declaration.

2          Moreover, even if Jane Doe had actually told Lovecruft that she had been raped

3   by Todd, Lovecruft's declaration makes clear that Lovecruft possessed a "high degree of

4   awareness of [the statement's] probable falsity." *Harte-Hanks Commc'ns, Inc. v.*

5   *Connaughton*, 491 U.S. 657, 688 (1989). The test for malice is a subjective one, and

6   courts do not inquire into whether the reason for believing the truth of a particular

7   statement is reasonable. *See Christian Research*, 148 Cal. App. 4th at 92. Here,

8   Lovecruft essentially admits that they did not adhere to their own subjective standard in

9   supposedly believing Jane Doe. Lovecruft declared that they believed Jane Doe's

10  purported statement about Todd because Lovecruft "believe[s] rape victims." (Lovecruft

11  Decl. ¶22.) However, applying Lovecruft's own subjective standard, in order for Lovecruft

12  to have believed that Jane Doe that had been raped, Lovecruft would have needed to

13  know that Doe had been raped. Because this prerequisite had not occurred, under

14  Lovecruft's own subjective standard, they could not have believed that Doe's allegation

15  against Todd was true. This is not a mere semantical dissection. Lovecruft chooses their

16  words very carefully, typically to create ambiguity regarding their accusations against

17  others. Lovecruft must be held to the subjective standard they identified.

18         Considering the evidence in the aggregate, it becomes clear that that Lovecruft

19  knew the Tweets were false when they published them, and that as a result, Lovecruft

20  also acted negligently. Specifically, Todd has demonstrated that: (1) Lovecruft knowingly

21  published false Tweets that Todd sexually assaulted and/or raped them, where Lovecruft

22  personally knew these statements were false; (2) Lovecruft knowingly submitted a false

23  declaration stating that Todd sexually assaulted them, where Lovecruft personally knew

24  the statements were false; (3) Lovecruft knowingly published false Tweets stating that

25  Jacob Appelbaum and Nadim Kobeissi sexually assaulted and/or raped them; (4)

26  Lovecruft falsely accused other third parties of horrific crimes; and (5) in support of their

27  motion, Lovecruft fabricated, or at the very least facilitated, the false declaration of Jane

28  Doe, which supposedly reflects what was told to Lovecruft by a victim of Todd—an

KRONENBERG ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

1    assertion that Lovecruft knew was false.

2           Based on this evidence, the Court must deny Lovecruft's special motion to strike.

3                                        **CONCLUSION**

4           For all of the reasons set forth above, the Court should deny Defendant's special

5    motion to strike Plaintiff's Complaint.

6

7    Respectfully Submitted,

8    DATED: July 29, 2019                    **KRONENBERGER ROSENFELD, LLP**

9

10                                           By:  _____s/Jeffrey M. Rosenfeld_____

11                                                   Jeffrey M. Rosenfeld

12                                           Attorneys for Plaintiff Peter Todd

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
SPECIAL MOTION TO STRIKE (ANTI-SLAPP)**