**KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (Bar No. 226112)
Jeffrey M. Rosenfeld (Bar No. 222187)
Tomasz R. Barczyk (Bar No. 312620)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
karl@KRInternetLaw.com
jeff@KRInternetLaw.com
tomasz@KRInternetLaw.com

Attorneys for Plaintiff Peter Todd

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| **PETER TODD**, an individual,<br><br>Plaintiff,<br><br>v.<br><br>**SARAH MICHELLE REICHWEIN** *aka* **ISIS AGORA LOVECRUFT**, an individual,<br><br>Defendant. | Case No. 4:19-cv-01751-DMR<br><br>**DECLARATION OF DANIEL J. BERNSTEIN IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT (ANTI-SLAPP MOTION)**<br><br>Date: August 22, 2019<br>Time: 1:00 p.m.<br>Location: Courtroom 4<br><br>Complaint Filed: April 3, 2019 |

Case No. 4:19-cv-01751-DMR

**BERNSTEIN DECL. IN SUPPORT OF PLA'S OPP. TO DEF'S ANTI-SLAPP MTN**

I, Daniel J. Bernstein, do hereby declare:

1. I am an individual, and I executed this declaration in the Netherlands. I am not a party to this lawsuit. I have personal knowledge of the facts stated below, and would competently testify regarding these facts if called to do so.

2. I currently have two employers. First, I have been employed by the University of Illinois at Chicago continuously since 1995, first as Research Assistant Professor, then as Assistant Professor, then as Associate Professor, then as Professor, and now as Research Professor. Second, I have new part-time employment as Guest Professor at the Ruhr University Bochum in Germany.

3. My main research area is cryptography. For example, I designed the "Curve25519" cryptographic algorithm, which is used by Facebook (according to https://www.whatsapp.com/security/WhatsApp-Security-Whitepaper.pdf) to encrypt WhatsApp messages, and is used by Apple (according to https://www.apple.com/business/site/docs/iOS_Security_Guide.pdf) in every iPhone. I also designed the "ChaCha20" and "Poly1305" cryptographic algorithms, which are used by Google (according to https://security.googleblog.com/2014/04/speeding-up-and-strengthening-https.html) to encrypt HTTPS connections from most Android phones. I estimate that cryptographic algorithms that I designed protect daily communication for more than two billion people around the world.

4. When I first became interested in cryptography, research in the area was hampered by export-control laws. I was the plaintiff in a successful court case in the 1990s (see generally https://www.eff.org/deeplinks/2015/04/remembering-case-established-code-speech/) regarding the constitutionality of these laws. Supreme Court precedent regarding due process in the First Amendment context played a key role in my case. Even before the case began, I was already a firm believer in the principles of due process.

5. My research is funded primarily by grants. For example, the Dutch Research Council (NWO) awarded a "Vici" grant for 1.5 million Euros to support my research. This grant funded a five-year part-time position for me at Eindhoven University

of Technology (TU/e) in the Netherlands starting in June 2012, along with various positions for Ph.D. students and postdoctoral researchers with various starting dates.

6. Overall nine students (four men, five women) have received their Ph.D.s under my supervision, including seven students (four men, three women) at TU/e, including three students (one man, two women) funded by the Vici grant. All seven TU/e students had two supervisors; in each case the other supervisor was Professor Tanja Lange ("Prof. Lange") at TU/e. Four of these seven TU/e students (two men, two women) received their Ph.D.s "cum laude," a distinction that is strictly limited by a central university committee to the top 5% (1/20) of TU/e Ph.D.s.

7. I am continuing to supervise other Ph.D. students at TU/e. One of them, Jacob Appelbaum, joined TU/e in 2015 as the fourth student funded by the Vici grant. Appelbaum's other supervisor was and is Prof. Lange.

8. At the Privacy Enhancing Technologies Symposium around the end of June 2015, in a discussion with Prof. Lange and me, Defendant, known to me as Isis Lovecruft, expressed interest in also joining TU/e as a Ph.D. student.

9. I did not offer Lovecruft a Ph.D. position. Prof. Lange also did not, as far as I know, offer Lovecruft a Ph.D. position.

10. On June 4, 2016, I saw a website (http://jacobappelbaum.net) that introduced itself as follows: "Hey there! We're a collective of people who have been harassed, plagiarized, humiliated, and abused—sexually, emotionally, and physically—by Jacob Appelbaum." The author name listed on the website was "Jacob's Rape Victims Collective." A true and correct copy of the complete <jacobappelbaum.net> website is attached hereto as **Exhibit A**.

11. The <jacobappelbaum.net> website contained various accounts regarding Appelbaum. I understood that at least three of the accounts were accusing Appelbaum of sexual assault. The authors of these three accounts used the pseudonyms "Forest," "River," and "Sam" to publish the accounts. See Exhibit A.

12. On June 6, 2016, I saw a public response from Appelbaum on

(http://www.twitlonger.com/show/n_1soorlp) stating that "the accusations of criminal sexual misconduct against me are entirely false." A true and correct copy of this public response by Appelbaum is attached hereto as **Exhibit B**.

13. I was, and I remain, horrified at the possibility that Appelbaum is a rapist.

14. I was, and I remain, horrified at the possibility that "Jacob's Rape Victims Collective" was falsely accusing Appelbaum of rape.

15. My view was, and is, that the severity of rape accusations requires such accusations to be handled by a court. I see far too much risk that self-appointed judges acting upon rape accusations end up erroneously punishing someone innocent, whether this is the accuser or the accused.

16. Lovecruft said in a subsequent blog post (see below) that she was "Forest." If a court concludes, after due process, that Appelbaum raped Lovecruft, or concludes, after due process, that Lovecruft lied about this, then I will support appropriate punishment for the guilty party. Unless and until this happens, I condemn the idea of punishing either of them regarding these accusations.

17. I expressed similar thoughts in a June 7, 2016 blog post "The death of due process" (https://blog.cr.yp.to/20160607-dueprocess.html). A true and correct copy of this blog post appears as **Exhibit C**.

18. My blog post had the subtitle "A few notes on technology-fueled normalization of lynch mobs targeting both the accuser and the accused. #ethics #crime #punishment." The blog post closed by saying "Ultimately the accused and the accuser are both punished, truth be damned."

19. My blog post did not mention Appelbaum. My view was and is that the relevant ethical principles are much broader than this example.

20. In the same blog post, I emphasized the possibility of error in both directions, and I stated the importance of having an unbiased tribunal hear testimony from both sides. My blog post condemns "angry people who want to be judges and juries and executioners" punishing "accusers who have not had their day in court" and, on the

opposite side, "alleged culprits who have not had their day in court."

21. Before Lovecruft accused Appelbaum of sexual assault, I was already familiar with rules that, in some circumstances, force university personnel to act as judges regarding United States students accused of rape, without regard to the existence or results of criminal proceedings. At TU/e, there is a university committee designated to handle harassment complaints, but TU/e policy regarding student complaints (https://educationguide.tue.nl/organization/official-rules-and-regulations/complaints-and-disputes/complaints/) says that TU/e will not consider "complaints that are part of proceedings under criminal law." A true and correct copy of TU/e's policy regarding student complaints is attached hereto as **Exhibit D**.

22. Around June 13, 2016, a week after my blog post, Lovecruft published a blog post (http://blog.patternsinthevoid.net/the-forest-for-the-trees.html). She announced her blog post on Twitter (https://twitter.com/isislovecruft/status/743131291093209089) on June 15, 2016: "Jacob Appelbaum sexually assaulted me. ... Here's my full story and what's next." A true and correct copy of Lovecruft's June 13, 2016 blog post is attached hereto as **Exhibit E**.

23. Lovecruft used, inside her blog post, the text "deeply-ingrained institutional structure of rape apologists" as a link to my blog post. I considered responding but decided that this was not necessary. The first line of text in my blog post had already described rape as a "horrifying crime."

24. Four months later, on October 11, 2016, Lovecruft published a series of tweets (https://twitter.com/isislovecruft/status/785972471912509440) again stating that Appelbaum had sexually assaulted her, and further stating that she had been retaliated against for "reporting" this. Each tweet ended with the hash tag "#WhyIDidntReport." A true and correct copy of Lovecruft's series of tweets is attached hereto as **Exhibit F**.

25. In her fourth tweet in the series of Tweets in Exhibit F, Lovecruft switched to making claims about Prof. Lange and me: "His academic advisors have taken steps to punish and threaten reprisal—for myself & others within academia—for our actions.

#WhyIDidntReport."

26. I tweeted, and I hereby vouch for, the following response: "For the record: I'm unable to figure out any connection between reality and this @isislovecruft tweet. She's severely misinformed or lying." I used Twitter's normal "reply" mechanism for my response. I further used Lovecruft's Twitter handle "@isislovecruft" with the objective of having Twitter notify her that my tweet had mentioned her. I have never blocked Lovecruft's account from seeing my tweets. A true and correct copy of my tweet in response to Lovecruft's tweet is attached hereto as **Exhibit G**.

27. As Exhibit F reflects, before my response, Lovecruft had also issued the following tweet: "Let's be clear: Jacob is a sociopathic narcisist, and his advisors are tenured academics actively covering up for other reports of abuse."

28. I condemn the idea of covering up reports of abuse. Contrary to Lovecruft's accusation, I have always taken care to handle such information properly. For example, in June 2016, I became deeply concerned regarding an ongoing conversation with a TU/e Ph.D. student (Henry de Valence, also known as "Harry," also Lovecruft's partner), so I sent him an email recommending that he send me a written report. A true and correct copy of my email to Henry de Valence appears as **Exhibit H**.

29. On October 17, 2017, a year and six days after the series of tweets described above, Lovecruft issued a tweet (http://archive.fo/kjQF5) calling me a "rape apologist and enabler." A true and correct copy of Lovecruft's October 17, 2017 tweet is attached hereto as **Exhibit I**.

30. The same day (October 17, 2017), Lovecruft issued a tweet (http://archive.fo/zQCKD) saying "these goddamned piece of shit rapist abuser men are only there because they're enabled by someone you know" and then saying "KILL THEIR ENABLER." A true and correct copy of this October 17, 2017 tweet is attached hereto as **Exhibit J**.

31. I understood Lovecruft's two tweets together as asking Lovecruft's followers, and others who saw her tweets, to take violent action towards me. I already

knew that she had more than 10,000 followers on Twitter. I saw that these two tweets were gathering some "likes" and "retweets."

32. I contacted an attorney on October 19, 2017 to ask about the possibility of a restraining order against Lovecruft. I pointed the attorney to Lovecruft's tweet calling me a "rape apologist and enabler"; her tweet saying "KILL THEIR ENABLER"; and each of the further URLs listed below in this declaration.

33. I had seen a series of October 16, 2017 tweets from Lovecruft (including http://archive.fo/3jFd0 and http://archive.fo/yaiGP) regarding another incident in which she described herself as becoming violent ("I punched [Hardison] in his fucking face") after losing control ("I just fucking lost it"). In Lovecruft's description, Hardison was someone who had previously "force kissed" her, and who then made offensive comments, at which point she "lost it" and punched him. In Lovecruft's description, Hardison responded to Lovecruft's punch by trying to drag her "into traffic," at which point she punched him again "3-4 times." Lovecruft's tweets included a disturbing picture of serious bruises on Lovecruft's arm. Lovecruft's tweets also indicated that Hardison had called the police. I do not know what the police report says.

34. I had also seen a tweet from Lovecruft in 2013 (http://archive.fo/sEgy0) where she seemed to be advocating arson. I would expect tweets such as this to attract followers with tendencies towards violence. I was also aware that the registration information for Lovecruft's web site (https://whois.icann.org/en/lookup?name=patternsinthevoid.net) points to an address (5934 N BORTHWICK AVE, PORTLAND OREGON 97217 US) that is on public record (http://archive.fo/Ddmtz) as having a house catch on fire.

35. I have not yet asked any court to take action regarding Lovecruft. However, I have now seen a court filing from Lovecruft repeating the same false accusations about me, including the "punish," "threaten," and "covering up" accusations. My understanding is that Lovecruft, by repeating these accusations only in an exhibit and not making the same accusations in the text of her declaration per se, is avoiding making these

accusations under penalty of perjury; but I would not expect her followers to notice this distinction.

36. I am fearful of what Lovecruft's continued distribution of these false accusations about me will bring in the future, up to and including violence by her followers. I would like the record to be set straight.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July 29, 2019.

By: D.J. Bernstein
Daniel J. Bernstein