Michael S. Kwun (SBN 198945)
mkwun@kblfirm.com
Nicholas A. Roethlisberger (SBN 280497)
nroethlisberger@kblfirm.com
KWUN BHANSALI LAZARUS LLP
555 Montgomery St., Suite 750
San Francisco, CA 94111
Tel: (415) 630-2350
Fax: (415) 367-1539

Ben Rosenfeld (SBN 203845)
ben.rosenfeld@comcast.net
ATTORNEY AT LAW
3330 Geary Blvd., 3rd Floor East
San Francisco, CA 94118
Tel: (415) 285-8091
Fax: (415) 285-8092

Attorneys for Defendant
ISIS AGORA LOVECRUFT

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

PETER TODD, an individual,

        Plaintiff,

vs.

SARAH MICHELLE REICHWEIN aka ISIS
AGORA LOVECRUFT, an individual,

        Defendant.

Case No.: 4:19-cv-01751-DMR

**REPLY IN SUPPORT OF DEFENDANT'S
SPECIAL MOTION TO STRIKE
PLAINTIFF'S COMPLAINT (ANTI-
SLAPP MOTION)**

**(Cal. Code of Civ. Proc. § 425.16 et seq.)**

Date:  August 22, 2019
Time: 1:00 p.m.
Location: Courtroom 4

Action Filed: April 3, 2019

## TABLE OF CONTENTS <span style="float:right">Page</span>

I.   INTRODUCTION..................................................................................................1

II.  ARGUMENT .......................................................................................................2

    A.   Lovecruft's speech was a matter of public concern ................................2

    B.   Todd has not met his burden of coming forward with admissible evidence to show that he has a probability of prevailing on his defamation claim..................5

        1.   *Even if Todd were not a limited-purpose public figure, he does not meet his burden of proving that Lovecruft failed to exercise reasonable care* .. 5

        2.   *Todd injected himself into the controversy, making himself a limited-purpose public figure* ............................................................................... 7

        3.   *There is no evidence that Lovecruft acted with actual malice* ................ 11

        4.   *Besides allegations of rape, none of the other statements are capable of being defamatory* ................................................................................... 15

III. CONCLUSION ..................................................................................................15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*1-800 Contacts, Inc. v. Steinberg,*
  107 Cal. App. 4th 568 (2003) ................................................................14

*Addison v. City of Baker City,*
  258 F. Supp. 3d 1207 (D. Or. 2017) .......................................................10

*Ampex Corp. v. Cargle,*
  128 Cal. App. 4th 1569 (2005) ...............................................................13

*Bikkina v. Mahadevan,*
  241 Cal. App. 4th 70 (2015) .....................................................................3

*Cabrera v. Alam,*
  197 Cal. App. 4th 1077 (2011) ..........................................................7, 8, 9

*Carney v. Santa Cruz Women Against Rape,*
  221 Cal. App. 3d. 1009 (1990) ..............................................................2, 4

*Christian Research Institute v. Alnor,*
  148 Cal. App. 4th 71 (2007) .............................................................12, 13

*Consumer Justice Center v. Trimedica International, Inc.,*
  107 Cal. App. 4th 595 (2003) ...................................................................3

*Contemporary Mission, Inc. v. New York Times Co.,*
  842 F.2d 612 (2d Cir. 1988) ...................................................................11

*Conversive, Inc. v. Conversagent, Inc.,*
  433 F. Supp. 2d 1079 (C.D. Cal. 2006) ....................................................5

*Copp v. Paxton,*
  45 Cal. App. 4th 829 (1996) .....................................................................8

*D.A.R.E. America v. Rolling Stone Magazine,*
  101 F. Supp. 2d 1270 (C.D. Cal. 2000) ..................................................13

*Dual Diagnosis Treatment Center, Inc. v. Buschel,*
  6 Cal. App. 5th 1098 (2016) ..................................................................3, 4

*Grenier v. Taylor,*
  234 Cal. App. 4th 471 (2015) .................................................................10

*Grewal v. Jammu,*
  191 Cal. App. 4th 977 (2011) .................................................................10

*Harkonen v. Fleming,*
  880 F. Supp. 2d 1071 (N.D. Cal. 2012) ....................................................9

*Hecimovich v. Encinal Sch. Parent Teacher Org.,*
  203 Cal. App. 4th 450 (2012) ...................................................................5

*Hufstedler, Kaus & Ettinger v. Superior Court*,
   42 Cal. App. 4th 55 (1996) ............................................................................................7

*Kaelin v. Globe Commc'ns Corp.*,
   162 F.3d 1036 (9th Cir. 1998) ....................................................................................15

*Mann v. Quality Old Time Service, Inc.*,
   120 Cal. App. 4th 90 (2004) ........................................................................................3

*Manzari v. Associated Newspapers, Ltd.*,
   830 F.3d 881 (2016) ......................................................................................................9

*McGarry v. University of San Diego*,
   154 Cal. App. 4th 97 (2007) ......................................................................................12

*McGehee v. Nebraska Dep't of Corr. Servs.*,
   No. 4:18CV3092, 2019 WL 1227928 (D. Neb. Mar. 15, 2019) ...................................6

*Milsap v. Journal/Sentinel, Inc.*,
   100 F.3d 1265 (7th Cir. 1996) ....................................................................................11

*Nadel v. Regents of Univ. of California*,
   28 Cal. App. 4th 1251 (1994) ......................................................................................9

*Partington v. Bugliosi*,
   56 F.3d 1147 (9th Cir. 1995) ......................................................................................11

*Reader's Digest Assn. v. Superior Court*,
   37 Cal. 3d 244 (1984) ..................................................................................................9

*Roe v. Doe*,
   No. C 09-0682 PJH, 2009 WL 1883752 (N.D. Cal. June 30, 2009) ....................11, 13

*Rudnick v. McMillan*,
   25 Cal. App. 4th 1183 (1994) ......................................................................................9

*Russian Newspaper Distribution, Inc.*,
   693 F. App'x 650 (9th Cir. 2017) ................................................................................5

*Springer v. I.R.S.*,
   No. S-97-0092 WBS GGH, 1997 WL 732526 (E.D. Cal. Sept. 12, 1997) ..................6

*Summit Bank v. Rogers*,
   206 Cal. App. 4th 669 (2012) ..................................................................................2, 3

*Talega Maint. Corp. v. Standard Pac. Corp.*,
   225 Cal. App. 4th 722 (2014) ......................................................................................4

*United States v. Wanland*,
   No. 2:13-cv-2343-KJM-KJN PS, 2017 WL 4269887 (E.D. Cal. Sept. 26, 2017) ......6

*Waldbaum v. Fairchild Publications, Inc.*,
   627 F.2d 1287 (D.C. Cir. 1980) ................................................................................10

*Z.F. v. Ripon Unified School District*,
    482 Fed. Appx. 239 (2012) ........................................................................................... 10

**Other Authorities**

Judicial Council of California Civil Jury Instructions ..................................................... 5

**Rules**

Federal Rule of Evidence 802 ........................................................................................... 4

Federal Rule of Evidence 807 ........................................................................................... 6

Federal Rule of Evidence 901 ........................................................................................... 4

## I.   INTRODUCTION

Todd does not and cannot dispute the key evidence presented by Lovecruft. Todd does not dispute that he met with Doe[1] in Germany in May 2017, that Doe told him about the symptoms of her sleep disorder, or that he subsequently took her to his hotel room, where she stayed until the early morning. Instead, he disputes only that anything that happened that night was rape. (Todd Decl. ¶ 33.) The Opposition offers no argument that Lovecruft was negligent, instead arguing only—without basis—that Lovecruft did not in fact believe Doe. Todd does not and cannot offer any evidence to support such conjecture, let alone refute the declarations and documentary evidence showing that Doe told Lovecruft that Todd raped her.  (Lovecruft Decl., Ex. 9; Doe Decl., Ex. A.) Likewise, Todd does not dispute grabbing Lovecruft, stating only that he did not "initiate" any physical contact, and even limiting that statement to a particular meeting in August 2015. (Todd Decl. ¶ 15.) These failures suffice to grant the motion.

Todd also argues that the Doe declaration and the Signal screenshots are fabricated. Todd offers nothing more than innuendo and supposition in support of this assertion, which is insufficient to meet his *evidentiary* burden in opposing the anti-SLAPP motion. Worse still, his claim of fabrication would require the Court not only to assume that Lovecruft, Doe, and Wilcox have lied, but that counsel Ben Rosenfeld was in on the scheme, lying in his declaration when he said he spoke with Doe, and heard her relate the facts that Todd says are a fabrication.

The remainder of the Opposition is likewise without merit. Todd argues that the debate over whether Appelbaum committed sexual assault was not a matter of public concern, ignoring case law saying precisely the opposite. He argues that he didn't inject himself into the debate, notwithstanding his voluntary tweets on the topic. And he claims that the allegedly defamatory statements were not related to the debate, when they plainly were.

The bottom line is that Todd lacks any evidence to meet his burden that Lovecruft acted

---

[1] Jane Doe initially submitted her declaration anonymously.  Defendant is submitting a new declaration by Doe in which she identifies herself, on the condition that Defendant seeks to have it sealed.  Therefore, she will still be referred to in this Reply by the pseudonym "Doe." Unless otherwise noted, all references to the "Doe Decl." refer to the new declaration.

negligently—let alone with malice—when Lovecruft referred to Todd as a rapist.  As such, the Court should grant the anti-SLAPP motion and award Lovecruft their fees and costs.

## II.    ARGUMENT

### A.    Lovecruft's speech was a matter of public concern

Lovecruft has met their initial burden under the first prong of the anti-SLAPP analysis by showing that their speech was made in a public forum in connection with an issue of public concern.  Todd does not dispute that Twitter is a public forum.  (Opp'n at 10-13.)

The Motion quoted *Carney v. Santa Cruz Women Against Rape*, 221 Cal. App. 3d. 1009, 1021 (1990), which holds that "sexual harassment and violence against women is of pressing public concern."  Todd does not address this case—which is directly on point—and does not even explicitly deny that the issue of sexual harassment and violence against women is an issue of public concern.  Instead, Todd argues that calling out those who have committed violence against women is too attenuated from the underlying issue to be protected.  But calling out prominent and powerful men who have engaged in sexual assault—men such as Todd and Applebaum—is *precisely* the issue at the center of the #MeToo movement generally, and the controversy swirling within the crypto community specifically.

*First*, the anti-SLAPP statute "states that its provisions 'shall be construed broadly' to safeguard 'the valid exercise of the constitutional rights of freedom of speech . . . .'"  *See Summit Bank v. Rogers*, 206 Cal. App. 4th 669, 693 (2012).  Todd does not cite this language.  Nor does Todd cite *Summit Bank*, which is analogous to the facts in this case.  In *Summit Bank*, the bank sued the plaintiff for "questioning the Bank's financial stability and its management decisions."  206 Cal. App. 4th at 694.  The Court held that "in the wake of the 2008 economic downturn," there developed "a profound public interest in the financial world, and a heightened interest in private banks."  *Id.*  "In light of the recent financial meltdown of some of our country's largest and most trusted financial institutions, the financial stability of our banking system is a legitimate object of constitutionally protected public commentary, discussion, criticism, and opinion."  *Id.*  Here, Lovecruft, like the defendant in *Summit Bank*, has accused the plaintiff of engaging in the very misconduct that has become the subject of "profound public

interest."  In *Summit Bank*, it was bank mismanagement, here it is powerful men committing sexual assault.  The fact that, like the defendant in *Summit Bank*, Lovecruft singled out the plaintiff's conduct is the whole point.

In response, Todd cites a series of factually dissimilar cases that stand for the uncontroversial notion that a defendant cannot tie a defamatory statement to an unrelated topic.  (Opp'n at 11-12.)  Todd cites *Mann v. Quality Old Time Service, Inc.*, which holds that the defendants' efforts to steal plaintiff's customers by falsely claiming to work for the plaintiff was not sufficiently connected to issues of pollution.  120 Cal. App. 4th 90, 100, 111 (2004).  In *Consumer Justice Center v. Trimedica International, Inc.*, the defendant's statement that their supplement "offers 'The All-Natural Way To A Fuller, More Beautiful Bust!'" was not about "herbal supplements in general."  107 Cal. App. 4th 595, 600-602 (2003); *see also Bikkina v. Mahadevan* 241 Cal. App. 4th 70, 83-84 (2015) (holding that allegations of "plagiarism and use of a contaminated sample" in regard to "two scientific papers [that] were not a topic of widespread public interest" did not have enough connection to climate change); *Dual Diagnosis Treatment Center, Inc. v. Buschel*, 6 Cal. App. 5th 1098, 1105 (2016) (holding that allegations on the "licensing status of a single rehabilitation facility" was not sufficiently of public interest).

Lovecruft did not accuse Todd of tax evasion or bank robbery—or anything else disconnected from the #MeToo debate.  Instead, the allegation that Todd is a rapist is directly relevant to the #MeToo controversy.

Todd also argues that Lovecruft "cannot transform their false accusations of rape against Todd into a general debate about sexual assault" or "turn a private controversy into a public matter by publishing accusations on the internet."  (Opp'n at 12.)  But Todd's framing is backward.  Lovecruft's tweets came *after* powerful men—both inside and outside the world of tech—started getting called out for sexual assault and harassment.  Todd also argues that Lovecruft made their statements concerning Todd "after Todd criticized Wilcox's and Lovecruft's Zcash business."  (*Id.*)  The allegation that Zcash was Lovecruft's "business," or that Lovecruft was engaged in a debate over Zcash rather than sexual abuse, lacks any evidentiary support.  Todd's declaration shows that Lovecruft went to Wilcox's house five years

ago to discuss "Zerocash hacking" along with "some general Tahoe-LAFS/Tor geekery" and
that the authors of the "Zcash Protocol Specification" thanked "everyone with whom they have
***discussed*** the Zerocash protocol design; in addition to the inventors, this includes . . . Isis
Lovecruft." (*See* Todd Decl. ¶¶ 24, 41, Exs. F, R (emphasis added).)[2]  This does not show that
Lovecruft's statements came in the context of a debate over Zcash.  At best, it shows that
Lovecruft discussed Zcash with people associated with its design five years ago.

Todd also argues that Lovecruft's Tweets were not part of an "ongoing" public
controversy because the "Appelbaum controversy arose in mid-2016, nearly three years before
Lovecruft's Tweets." (Opp'n at 13.)  But that is not the law.  The Court in *Carney* had no
trouble holding that "sexual harassment and violence against women is of pressing public
concern" without the need for some sort of recent national news story.  Sexual harassment and
violence is ***always*** an issue of "pressing public concern."  Furthermore, neither of the cases
Todd cites support his argument that there is a time limit on how long sexual assault is a matter
of public concern.  Both *Dual Diagnosis*, 6 Cal. App. 5th at 1104, and *Talega Maint. Corp. v.
Standard Pac. Corp.*, 225 Cal. App. 4th 722, 734 (2014), deal with topics that are "not of
interest to the public at large, but rather to a limited, but definable portion of the public."  That
is not the case here.  *Carney* is clear that sexual assault is a pressing public concern for
everyone.  Furthermore, neither case addressed any time limit on a controversy.  The Court in
*Dual Diagnosis* based its holding on the fact that the "licensing status of a single rehabilitation
facility is not of '*widespread*, public interest'"—not that there was some public controversy that
was no longer ongoing.  6 Cal. App. 5th at 1105.  And *Talega* held that there was no evidence
there of "any controversy, dispute, or discussion" at all—again, not that there was some
previous controversy that was not ongoing.  225 Cal. App. 4th at 734.

Holding that Lovecruft's statements are not entitled to protection under anti-SLAPP
would contravene California's principle that the statute be "construed broadly," and create a
profound disincentive for those who have been abused to speak up.

---

[2] Lovecruft objects to Exhibit R as improperly authenticated hearsay.  Fed. R. Evid. 802, 901.

**B.      Todd has not met his burden of coming forward with admissible evidence to show that he has a probability of prevailing on his defamation claim**

Because Lovecruft has met their initial burden on the first prong of anti-SLAPP, Todd is required to come forward with evidence to support all elements of his lone defamation claim. Todd, however, has not met this burden because he has provided no evidence to show that Lovecruft acted with malice—or even negligently.  On the contrary, the incontrovertible evidence shows that Lovecruft exercised reasonable care in relying on Doe's statement to Lovecruft, "he [Peter Todd] raped me." *Hecimovich v. Encinal Sch. Parent Teacher Org.*, 203 Cal. App. 4th 450, 470 (2012) (plaintiff must prove that the defendant "failed to use reasonable care"); *see also* Judicial Council of California Civil Jury Instructions ("CACI") 1702-1705.

Lovecruft's and Doe's declarations both describe their Signal conversation in which Doe explicitly told Lovecruft that Todd raped her and recounted the details of her ordeal.  (Lovecruft Decl. ¶ 21; Doe Decl. ¶ 3.)  They also have both authenticated screenshots depicting the portion of their exchange in which Doe told Lovecruft that Todd raped her.[3]  (Lovecruft Decl, Ex. 9; Doe Decl, Ex. A.)  This evidence shows that Lovecruft did not fabricate the allegation of rape, and therefore did not act with malice or negligence.

Todd's only response is that he is not a limited-purpose public figure and, failing that, that the evidence must be a forgery.  Todd's failure to show at least negligence—let alone malice—is fatal to his defamation claim.

**1.      Even if Todd were not a limited-purpose public figure, he does not meet his burden of proving that Lovecruft failed to exercise reasonable care**

Todd admits that—even if he is not a limited-purpose public figure—he has the burden

---

[3] Todd objects to the Signal message—along with Exhibit 2—because they are "facially incomplete." (Opp'n at 9.)  However, like the defendant in *Conversive, Inc. v. Conversagent, Inc.*, Todd "fails to identify any evidentiary rule or cite to any authority that suggests that documents must be 'complete' to be admissible." 433 F. Supp. 2d 1079, 1086 n.8 (C.D. Cal. 2006). Todd cites *Russian Newspaper Distribution, Inc., 693 F. App'x 650 ,651 (9th Cir. 2017)*, which found no error in excluding an unreliable translation of another document that contained gaps filled with ellipses.  There are no gaps in the excerpt provided here.

of "prov[ing] that the defendant acted negligently in making the defamatory statement." (Opp'n at 19.) However, Todd does not argue that he has met this burden beyond stating that "[b]ecause Todd has shown that Lovecruft published the Tweets with malice, he has satisfied his burden under either standard." (*Id.* at 20.) Todd has put all his eggs in one basket. He has provided no argument that—should the Court find he is not a limited-purpose public figure— there is an analysis the Court should use in evaluating the evidence that is different from his burden to show malice. As such, even if Todd is held not to be a limited-purpose public figure, he must still meet the malice standard as he equates the two analyses in his Opposition.[4]

Aside from disputing that it was rape (Todd Decl. ¶ 33), Todd does not dispute that the events Doe relayed to Lovecruft happened. And the Opposition offers no explanation why it would be negligent for Lovecruft to believe Doe, instead asserting, based on nothing more than Todd's "belie[f]," that the Doe declaration must be a fabrication.[5] Furthermore, while Todd has objected to Doe's declaration because it is signed using a pseudonym, courts do allow this. *See McGehee v. Nebraska Dep't of Corr. Servs.*, No. 4:18CV3092, 2019 WL 1227928, at *2 (D. Neb. Mar. 15, 2019) (allowing declaration from "President of Pharmacy N"). For example, IRS agents are often permitted to use pseudonyms to avoid harassment. *United States v. Wanland*, No. 2:13-cv-2343-KJM-KJN PS, 2017 WL 4269887, at *9 (E.D. Cal. Sept. 26, 2017); *Springer v. I.R.S.*, No. S-97-0092 WBS GGH, 1997 WL 732526, at *5 (E.D. Cal. Sept. 12, 1997). The same logic of avoiding harassment applies even more readily here. In any event, Doe has now affirmed her statements in a declaration signed under her own name. (*See* Doe Decl.)

Furthermore, Todd does not deny that he grabbed Lovecruft by the arm. Todd's

---

[4] Lovecruft does not argue that the standards are the same, only that Todd has not articulated a reason that the evidence could meet the standard for negligence but not for malice. As such, Lovecruft has no evidentiary argument to oppose.

[5] In so arguing, Todd ignores counsel Rosenfeld's sworn declaration that he spoke with Doe, who confirmed the details of her conversation with Lovecruft. That declaration is offered as an alternative to Doe swearing under her name, and as a statement by an officer of the court has circumstantial guarantees of trustworthiness equivalent to other hearsay exceptions. Fed. R. Evid. 807. Doe's declaration, meanwhile, is offered to prove that the Signal conversation happened, not to prove the truth of Doe's statements to Lovecruft, and thus also is not hearsay.

declaration states that he met with Lovecruft at the Workshop Café but that he "did not ***initiate***

***any physical contact*** with Lovecruft during this time."  (Todd Decl. ¶ 15.)  Todd's statement

that he did not "initiate" physical contact does not actually contradict Lovecruft's version of

events.  Nor does it show that Lovecruft's tweets about a personal "story" about Todd (without

further detail) were made with negligence.

### 2.   Todd injected himself into the controversy, making himself a limited-purpose public figure

Aside from Todd's failure to demonstrate negligence, the motion should be granted

because Todd is a limited-purpose public figure and has not shown Lovecruft acted with malice.

Courts consider three elements when deciding whether a plaintiff is a limited-purpose

public figure.  (*See* Mtn. at 11; Opp'n at 16.)  However, Todd only explicitly challenges one of

the elements—the requirement that he "must have undertaken some voluntary act through

which he or she sought to influence resolution of the public issue."  *Cabrera v. Alam*, 197 Cal.

App. 4th 1077, 1092 (2011).[6]  But the evidence shows that Todd took voluntary actions to

influence a public issue.

Todd attempts to downplay his actions stating that he did nothing more than publish "a

couple of Tweets about the rape allegations against third party Jacob Appelbaum."  (Opp'n at

16.)  But that does not fully describe the magnitude of Todd's actions.  Todd, with just a few

clicks, can disseminate his views to his 146,000 Twitter followers.  While Todd characterizes

the threshold of showing one is a limited-purpose public figure as being "fairly high,"[7] all that is

required is that the defendant do something in which he seeks to influence resolution of a public

---

[6] Todd does not dispute (*see* Opp'n at 16-19) that there was a "public controversy" or that the "alleged defamation must have been germane to the plaintiff's participation in the controversy." *Cabrera*, 197 Cal. App. 4th at 1092.

[7] Todd cites *Hufstedler, Kaus & Ettinger v. Superior Court*, 42 Cal. App. 4th 55, 69 (1996), for the proposition that "California courts require a 'fairly high' threshold of public activity to elevate a private person to limited-purpose public figure status."  (Opp'n at 16-17.)  But the quoted language from *Hufstedler* does not seem to refer to limited-purpose public figures, but instead seems to refer to all-purpose public figures.  *See id.* ("To begin with, a fairly high threshold of public activity is necessary to elevate a person to public figure status . . . .").

issue.  It is not even "necessary to show that a plaintiff actually achieves prominence in the public debate," instead it is sufficient to show that the plaintiff "attempts to thrust himself into the public eye."  *Copp v. Paxton*, 45 Cal. App. 4th 829, 845-846 (1996).

Here, Todd himself affirmatively avers that he is a "highly-regarded [person] in the cryptography and cryptocurrency sectors" who is regularly "invited to speak at conferences around the world." (Compl. ¶¶ 17-18.) He admits that he published "a couple of Tweets about the rape allegations against third party Jacob Appelbaum." (Opp'n at 16.)  Todd admits that "[i]nitially" he "published statements to Defendant commending her on her bravery and denouncing sexual violence." (Compl. ¶ 30.)  Todd also admits that he later changed his mind and in "August 2016, Todd publicly stated that he did not know what was true regarding Defendant's and others' allegations against Appelbaum." (Compl. ¶ 31.)  Furthermore, Todd stated that it would be best to "stay neutral" on whether Appelbaum had abused anyone without "solid evidence" such as an "audio/video recording" of Appelbaum "abusing someone." (Lovecruft Decl., Ex. 8.)  Soon thereafter, Todd noted that "what happened" with Appelbaum could lead to "a subsequent privacy effort" to "exclude women." (*Id.*)  Todd attempted, through his tweets, to cast doubt on Lovecruft's allegations against Appelbaum after initially supporting them and sought to portray allegations against abusers as something that could ultimately hurt women.  Todd was broadcasting his views to 146,000 followers on the debate surrounding sexual assault and whether victims who come forward should be believed. Todd says that his tweets "stated only that Todd did not know what to believe." (Opp'n at 19.)  First, Todd's tweets go far beyond simply asserting his own ignorance.  Second, in the #MeToo era, publicly casting doubt on those who come forward with allegations of abuse *is* staking out a position in the debate.  This is especially true here where Appelbaum's own employer found the allegations credible enough to terminate him.  (*See* Rosenfeld Decl., Ex. 4 ("[T]he Tor Project said that a seven-week investigation into the allegations involving Mr. Appelbaum determined they were accurate.").)  That is more than enough to meet the requirement that Todd take one "voluntary act through which he or she sought to influence resolution of the public issue." *See Cabrera*, 197 Cal. App. 4th at 1092.

Todd seeks to raise the standard of determining limited-purpose public figure status by citing *Manzari v. Associated Newspapers, Ltd.*, for the incorrect proposition that the plaintiff there was deemed to be a limited-purpose public figure based on "far more purposeful interjection into an active controversy" than Todd.  (Opp'n at 17.)  However, the Court in *Manzari* held that the plaintiff was a public figure for ***all*** purposes, ***not*** a limited-purpose public figure.  *See* 830 F.3d 881, 888-89 (2016) ("With millions of Internet downloads, extensive publicity, and broad public exposure, Manzari undoubtedly qualifies as a public figure.") Lovecruft has not argued that Todd is a public figure for all purposes, making *Manzari* inapplicable. The other cases Todd relies on are helpful to defendant, not him, as they mostly found that the plaintiff was a limited-purpose public figure.  *See Rudnick v. McMillan*, 25 Cal. App. 4th 1183, 1190 (1994) (holding plaintiff a limited-purpose public figure); *Harkonen v. Fleming*, 880 F. Supp. 2d 1071, 1080–81 (N.D. Cal. 2012) (same); *Cabrera*, 197 Cal. App. 4th at 1092–93 (same); *Reader's Digest Assn. v. Superior Court*, 37 Cal. 3d 244, 254 (1984) (same); *Nadel v. Regents of Univ. of California*, 28 Cal. App. 4th 1251, 1270 (1994) (same).

Todd highlights *Nadel* (*see* Opp'n at 17), but misleadingly focuses on the plaintiff Nadel, who did much more to influence a debate in Berkeley, while neglecting to mention the other plaintiff, Denney, who had a "less prominent" role but "nevertheless thrust herself to its forefront."  28 Cal. App. 4th at 1270 (Denney "spoke publicly at city council meetings and at political and cultural events" and "participat[ed] in a press conference").  Either way, Todd did much more to influence a public debate than either of the plaintiffs in *Nadel* did.  Even if Nadel and Denney had reached every citizen of Berkeley with their message, they would still fall short of Todd, who has more Twitter followers than Berkeley has residents.[8]

The cases Todd cites where court did not deem a plaintiff a limited-purpose public figure are distinguishable on the facts.  In *Grewal v. Jammu*, the court—in dicta—noted that that the trial court had found that the plaintiff was not a limited-purpose public figure because he acted as nothing more than an "ordinary congregant" at his temple.  *See* 191 Cal. App. 4th

---

[8] https://www.census.gov/quickfacts/fact/table/berkeleycitycalifornia/PST045218.

977, 988 n.7 (2011).  Similarly, in the unpublished *Z.F. v. Ripon Unified School District*, the Ninth Circuit, without reciting the factual history of the case, held that the plaintiffs were not public figures because merely being "involved in or associated with a matter that attracts public attention" is inadequate.  482 Fed. Appx. 239, 241 (2012).  But Todd was not merely "associated" with the debate over Appelbaum; he injected himself, choosing to share his opinions on the controversy with his 146,000 followers, where expressing doubt and uncertainty *means* weighing in on the side of the accused, Appelbaum.  Todd took steps to influence a public debate.  That is all that is required.

Two other cases Todd relies on do not hold that the plaintiff did not voluntarily seek to influence a public issue, but instead find that the alleged defamation was not germane to the plaintiff's participation in the controversy.  *See Addison v. City of Baker City*, 258 F. Supp. 3d 1207, 1241 (D. Or. 2017) ("significantly, Addison's views . . . were on a completely different subject matter than Defendants' alleged defamation"); *Grenier v. Taylor*, 234 Cal. App. 4th 471, 485 (2015) ("Bob thrust himself into the public eye as an expert on the Bible," which did not make him a public figure "regarding child abuse, child molestation, tax evasion or theft").  Even if Todd had argued that Lovecruft's statements were not germane to Todd's participation in the controversy, these cases would be inapposite.[9]  Lovecruft's Motion cited *Waldbaum v. Fairchild Publications, Inc.*, which held that statements that go toward a plaintiff's "talents, education, experience, and motives could have been relevant to the public's decision whether to listen to [them]" are germane.  627 F.2d 1287, 1298 (D.C. Cir. 1980).  Todd does not cite *Waldbaum* or challenge that a plaintiff's motivations can be germane.  Nor does he seriously challenge the notion that making allegations of sexual assault in the #MeToo context are not just germane but central to the public controversy.  Here, whether or not Todd is a rapist himself is surely relevant to his motivations for casting doubt on allegations of sexual assault by others

---

[9] Todd's Opposition does not appear to contest the "germane" element of the limited-purpose public figure test.  However, in the course of challenging whether he voluntarily thrust himself into a public debate, Todd does state that "Lovecruft's unprompted Tweets about Todd, published years after the Appelbaum controversy, have no relation to that controversy."  (Opp'n at 19.)  As such, Lovecruft briefly addresses the issue.

and stating that such allegations may harm women.

Finally, Todd argues that Lovecruft's "argument fails" because Lovecruft submitted no evidence that Todd "in any way participated in the Appelbaum controversy" in the two-and-a-half years between Todd's tweets and Lovecruft's statements.  (Opp'n at 18.)  This is contrary to law as a limited-purpose public figure does not lose their status with the passage of time.  *See Partington v. Bugliosi*, 56 F.3d 1147, 1152 n.8 (9th Cir. 1995) ("every court of appeals that has specifically decided this question has concluded that the passage of time does not alter an individual's status as a limited purpose public figure"); *see also Contemporary Mission, Inc. v. New York Times Co.*, 842 F.2d 612, 620 (2d Cir. 1988); *Milsap v. Journal/Sentinel, Inc.*, 100 F.3d 1265, 1270 (7th Cir. 1996).

### 3. There is no evidence that Lovecruft acted with actual malice

As a limited-purpose public figure Todd, "must establish a probability that he can produce clear and convincing evidence that the allegedly defamatory statements were made with knowledge of their falsity or with reckless disregard of their truth or falsity."  *Roe v. Doe*, No. C 09-0682 PJH, 2009 WL 1883752, at *13 (N.D. Cal. June 30, 2009). In deciding a defendant's motion to strike a claim for defamation, "the evidence must be such as to command the unhesitating assent of every reasonable mind." *Id.* at *14. "This is a subjective test that focuses on the defendant's attitude toward the veracity of the published material, as opposed to his or her attitude toward the plaintiff." *Id.* at *13 (internal quotation marks omitted).

Todd has not met this burden.  He simply declares that Lovecruft's tweets were false, introduces evidence he hopes will undermine Lovecruft's credibility, and finally accuses Lovecruft (or unnamed "accomplices")—without evidence—of fabricating evidence.

*First*, Todd has produced no evidence that Lovecruft knew their statements were false. Todd simply asserts that "Lovecruft knew the Tweets were false when they published them." (Opp'n at 21.)  There is no evidence in the record to support this.  The Opposition only cites Todd's declaration where he denies raping anyone and makes the leap that this proves Lovecruft had the subjective knowledge that the rape allegation against him was false.  (*Id.*)

Like the defendant in *McGarry v. University of San Diego*, 154 Cal. App. 4th 97, 117

(2007), Lovecruft "affirmatively averred that [they] believed, based on the information [they] had received from people [they] believed to be reliable sources" that the allegation of rape against Todd was true.  (Lovecruft Decl. ¶ 22.)  Specifically, Lovecruft stated:

> I believed the foregoing account by Jane Doe because: I believe rape victims—on several lines of reasoning, including reports and studies by reasonably neutral entities, such as the BBC, FBI, CDC, concluding that false rape allegations are as low as 1.5% of total rape allegations; because she told me plainly that Mr. Todd raped her; because she provided extensive details of her encounter with Mr. Todd; because she corroborated my awareness that others, besides the two of us, had accounts of being sexually harassed by Mr. Todd; because of my own such experience with him; and because of some of the similar aspects, such as trying to get us to go to his hotel rooms; persistent advances while ignoring obvious verbal and body language that we were not interested; invading our personal and physical spaces; and resort to physical coercion.

(*Id.*)  And like the defendant in *McGarry*, Todd has "no contrary evidence, much less evidence capable of command[ing] the unhesitating assent of every reasonable mind."  154 Cal. App. 4th at 117 (internal quotation marks omitted).

The Opposition states that "Lovecruft essentially admits that they did not adhere to their own subjective standard in supposedly believing Jane Doe" because Lovecruft stated in their declaration that they "believe rape victims."  (Opp'n at 24.)  Todd interprets Lovecruft's statement as saying that they only believe those who have been raped, and so unless Lovecruft **knew** that Doe had been raped, Lovecruft would not have believed her.  Read in full, their testimony is that they believe those who make rape allegations. Todd's facile "analysis" ignores the rest of the paragraph where they explain why they believe Doe and others like her.

Todd also argues that his declaration is similar to the evidence that the Court in *Christian Research Institute v. Alnor*, 148 Cal. App. 4th 71, 93 (2007), noted in dicta might have been enough to show malice.  (Opp'n at 21.)  The defendant in *Christian Research* submitted a declaration stating that he believed that the U.S. Postal Service had launched a criminal investigation against plaintiffs and described his conversations with someone named "Debra" who gave him the information.  148 Cal. App. 4th at 85.  This was enough to overcome evidence submitted by plaintiffs that the conversation had not taken place—specifically that the Postal Service could not locate records relating to any criminal investigation.  *Id.* In dicta the

Court stated that if plaintiffs had, for example, submitted evidence that there was no "Debra" who worked at the post office in question, it may have been enough to show actual malice. *Id.* at 93.  But Todd has not submitted any evidence like that.  He points to his own declaration, not to a declaration from Jane Doe stating that she never had a conversation with Lovecruft, or a declaration from someone who could say Jane Doe does not exist.  Todd has nothing like that.

***Second***, Todd asserts that Lovecruft "had a motive to assert false allegations against Todd: namely, Lovecruft published the Tweets after Todd criticized Bryce Wilcox's and Lovecruft's Zcash business."  (Opp'n at 21.)  Whether Lovecruft had a "motive" to defame Todd is immaterial.  In *D.A.R.E. America v. Rolling Stone Magazine*, a case cited in the Opposition, the Court addressed this very argument. 101 F. Supp. 2d 1270, 1285 (C.D. Cal. 2000).  There the Court held that "the phrase actual malice has nothing to do with bad motive or ill will." *Id.* (internal quotation marks omitted).  Similarly, in *Roe*, the plaintiff argued that actual malice could be inferred from "ill-will and hostility" shown by the defendant.  2009 WL 1883752, at *15 (plaintiff introduced emails wherein the defendant described the plaintiff "as being 'sleazy,' about 'cash and nothing else,' and as having no 'scruples'").  *Roe*, however, held that "[e]ven assuming that these statements raise an inference of ill-will, personal spite or bad motive, they are insufficient to demonstrate the requisite malice required . . . ." *Id.*; *see also Ampex Corp. v. Cargle*, 128 Cal. App. 4th 1569, 1579 (2005) (a court cannot "infer actual malice solely from evidence of ill will, personal spite or bad motive").  In any event, there is no evidence showing that Lovecruft was motivated by Todd's criticism of Zcash.  (*See* Section II.A., above.)

***Third***, Todd seeks to establish malice by undermining Lovecruft's "credibility" by pointing to (1) "communications between Lovecruft and Todd that occurred after the supposed assault on Lovecruft show that Lovecruft and Todd maintained a friendly relationship"; and (2) "their history of routinely and falsely accusing men and women of sexual assault."  (Opp'n at 21-22.)  First, this is a red-herring, as Lovecruft's documentary evidence that they relied on Doe's statement that Todd raped her is unassailable.  Second, Todd is asking the Court to do something that it cannot—consider Lovecruft's credibility.  *See 1-800 Contacts, Inc. v.*

*Steinberg*, 107 Cal. App. 4th 568, 585 (2003) (the court cannot "weigh [the defendant's] evidence against the plaintiff's, in terms of either credibility or persuasiveness").  Todd acknowledges this in his Opposition: "the court does not weigh credibility nor evaluate the weight of the evidence."  (Opp'n at 9.)  Despite acknowledging this prohibition, Todd devotes page after page of his Opposition to his effort to undermine Lovecruft's credibility.  (*See*, *e.g.*, Opp'n at 5-7, 21-23.)  Simply put, the declarations of Appelbaum, Kobeissi, and Bernstein—are irrelevant to any issue to be addressed by the Court.

Furthermore, the communications showing intermittent contact with Todd in late 2015 and early 2016 prove nothing.  Lovecruft stated that after the assault, they "sought to avoid Mr. Todd"—not that they completely cut off all contact with him.  (Lovecruft Decl. ¶ 10.)  Even if credited, Todd's version of events does not show malice as they do not go to whether Lovecruft had a subjective belief in the truth of their statements.

**Lastly**, without any evidence of actual malice, Todd alleges—also without evidence—that Lovecruft must have fabricated the evidence submitted in support of their anti-SLAPP motion.  (Opp'n at 22-23.)  The Opposition notes that the portion of the Signal message submitted with Lovecruft's declaration does not contain Todd's name.  (*Id.*)  But this argument ignores the fact that Lovecruft's and Doe's uncontradicted declarations state not only Todd's name but details of Todd's rape.  (Lovecruft Decl. ¶ 21-23; Doe Decl. ¶ 3.)  The Opposition also states that "Lovecruft implies that they obtained this evidence from their own records" and goes on to note the arrangement of the messages is inconsistent with this.  (Opp'n at 23.)  First, Lovecruft implied no such thing.  (Lovecruft Decl. ¶ 23, Ex. 9.)  Second, the arrangement of the messages is consistent, not with forgery, but with the truth that the Signal screen shots were provided by Jane Doe, which she has now also authenticated.  (Doe Decl. ¶ 5.)

Todd also alleges that "Jane Doe's declaration was either completely fabricated by Lovecruft or by an accomplice of Lovecruft."  (Opp'n at 23.)  Again, Todd has no evidence of this.  Furthermore, his Opposition does not identify any "accomplice" to forgery; on the contrary, Doe's declaration was submitted by counsel of record Ben Rosenfeld, an officer of the Court, attesting that he heard Doe recite her account of Todd's rape of her, and prepared her

declaration accordingly.  (Rosenfeld Decl. ¶ 2.)

### 4. Besides allegations of rape, none of the other statements are capable of being defamatory

Apart from calling Todd a "rapist," none of the four tweets at issue contain statements of fact that are separately defamatory.  As noted in the Motion, the statements that Lovecruft has a "story" about Todd, and that they have spoken to others who recounted unspecified "awful and horrifying reports" are not defamatory.  (Mtn. at 16.)  Furthermore, the following statement contains no allegations against Todd:

> "i love watching the men in my industry who've sexually abused me and many others squirm as I take them out one by one while they nervously await their turn [¶] hahahahahahahaha eat goat dung you epoxy brained cowards." (*Id.*)

Finally, the statement that "[t]his is not even touching upon the stories of the rape and assault survivors of you and @petertodd and @ioerror and you all have been seen to behave conveniently alike and seen to dutifully protect one another"—is not clearly about Todd, nor does it allege anything besides rape. (Opp'n at 7, 14)

Todd argues that these other statements must be read in "context."  (Opp'n at 15.)  However, when the courts discuss the need for "context" they refer to the need to read the statement as a whole.  *Kaelin v. Globe Commc'ns Corp.*, 162 F.3d 1036, 1040 (9th Cir. 1998).  Todd asks this Court to look at statements made by Lovecruft "three days before publishing"—not the statement itself as a whole.  (Opp'n at 15.)  But if the reader must look to information "extrinsic to the publication," the defamation is *per quod*, and requires evidence of special damages.  (*See* Mtn. at 17.)  Todd has provided no such evidence.

## III.   CONCLUSION

For the foregoing reasons, Lovecruft requests that the Court grant them relief under California's anti-SLAPP law, strike and dismiss plaintiff's complaint with prejudice, and award Lovecruft their attorney's fees and costs.

/ / /

/ / /

1

2

Dated: August 5, 2019

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KWUN BHANSALI LAZARUS LLP
BEN ROSENFELD

By: */s/ Nicholas Roethlisberger*
    Nicholas Roethlisberger

Attorneys for Defendant
ISIS LOVECRUFT